## Pennsylvania Railroad Co. *versus* Patterson.

1. The Act of May 15th 1857, for the sale of the public works, required that "*immediately*" after the purchaser should take possession, he should "thereafter keep up in good repair and operating condition the line of said railroad and canal," &c., the same to "be and remain for ever a public highway and kept open and in repair by the purchaser, * * * for all parties desiring to use and enjoy the same." By Act of May 3d 1864, it was declared that by the Act of 1857, the Commonwealth required the purchasers of the main line to keep the canals "in a condition of repair, &c., which shall be equal to the condition of repair, &c., in which the same were at the time the Commonwealth delivered the same into the purchasers' possession." *Held*, that under these acts the purchasers were bound to keep the canals in good repair and operating condition, although they may not have been in such repair when delivered to them.

2. The duty was immediate on taking possession as respects its obligation

[Pennsylvania Railroad Co. *v.* Patterson.]

but not as to the time of its performance; the purchasers were entitled to a reasonable time commensurate with the magnitude of the works to make repairs.

3. If the purchasers did not commence the repair in a reasonable time and pursue it with diligence, they were liable for negligence to the owner of canal-boats for such injury as he thereby sustained.

4. The purchasers were not responsible for unavoidable accidents by sudden storms or floods, if the canals were repaired as soon as reasonably practicable.

5. The rule as to the measure of damage stated in this case.

January 20th 1873. Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ. SHARSWOOD, J., at Nisi Prius.

Certificate from Nisi Prius.

This was an action on the case, commenced August 9th 1866, by Adolphus Patterson against the Pennsylvania Railroad Company. The action was against the company as owners of the canal between Hollidaysburg and Columbia, formerly a part of the "Main Line" of the Public Works of the Commonwealth.

The declaration averred that the plaintiff "was the owner of certain boats which he had employed for many years during canal navigation upon the canals from Columbia to the junction at Duncan's Island, and from thence to Hollidaysburg. That the canals were purchased by the defendants under an Act of Assembly entitled an 'Act for the sale of the main line of the public works,' approved May 16th 1857. That by the provisions of that act it became their duty, as purchasers, to keep the canals in good order and repair and operating condition, and to provide that the same should remain a public highway and be kept open and in repair for the use of parties desiring to enjoy the same. That the defendants, not regarding their duty, did not keep the canals in proper repair; in consequence of which, in the spring of 1860 and subsequently, between that period and the close of the boating season of 1865, three boats belonging to the plaintiff, viz., the 'Effort,' 'Regulator,' and 'Neptune' were necessarily detained; were obliged to carry smaller loads than their capacity, and were often damaged by various accidents, to which, on account of the bad condition of the canals, they were subjected."

By the Act of May 16th 1857, for the sale of the public works (Pamph. L. 519), it was provided in the fifth section, "That immediately after the said purchaser * * * shall take possession of the same, the said purchaser shall be bound ever thereafter to keep up in good repair and operating condition the line of said railroad and canal, extending from Hollidaysburg to Philadelphia * * * with the necessary toll-houses, water-stations, locks, buildings and other appertenances; and the said railroad and canal shall be and remain for ever a public highway * * * it being the true intent and meaning of this act, that the said sections of canal and railroad, and every part thereof, except as is herein provided," * * * " shall be and remain a public highway, and kept open and in re-

pair by the purchaser * * * for the use and enjoyment of all parties desiring to use and enjoy the same."

By the Act of May 3d 1864, it was enacted: "That it is the true intent and meaning of the fifth section of the act, entitled 'An Act for the sale of the main line of the public works,' approved May 16th 1857, and the Commonwealth by said section does require the purchasers of the main line to keep the canals referred to in said section in a condition of repair and fitness for use which shall at all times during seasons of navigation be equal to and not inferior to the condition of repair and fitness for use in which the same were, at the time the Commonwealth delivered the same into the purchasers' possession."

The case was tried at Nisi Prius, January 10th 1872, before Mr. Justice Williams.

The facts in the case sufficiently appear in the charge of Judge Williams, the principal question being the construction of the Act of 1864, in connection with the Act of 1857.

Judge Williams charged the jury:

"This is an action brought by the plaintiff to recover damages alleged to have been occasioned by the negligence of The Pennsylvania Railroad Company in not keeping in good repair and operating condition, the Juniata division of the canal extending from Hollidaysburg to the junction at Duncan's Island, near Harrisburg, from the year 1860 to the year 1865, inclusive.

"The plaintiff alleges that he was engaged in transporting freight on this portion of the canal, from the opening of navigation in the spring of 1860, to the close of navigation in the fall of 1865; a portion of the time (the first year or two), with three boats, namely: the Effort, the Regulator and the Neptune; and a part of the time (the last two or three years), with two of the boats, the Effort and Regulator. And that he sustained damages to a large amount each year, from detentions at different points, loss of freight from inability to carry more than half a load on some portions of the canal, and injury to the boats occasioned by the want of repair and bad condition of the canal; for all which items of damage he claims that the company is responsible, in consequence of its neglect to keep the canal in good order and proper repair.

"The Pennsylvania Railroad Company became the purchaser of the main line of the public works, of which the portion of the canal in question is part, under the Act of 15th of May 1857. By the fifth section of that act, it was provided that 'immediately,'" &c., * * * (as above stated).

"The language of this section is plain and intelligible, and it would seem that there could be no doubt as to its meaning. It declares in express terms that 'the said railroad and canal shall be and remain for ever a public highway, for the use and enjoyment of all parties desiring to use and enjoy the same,' and that 'the

said purchaser shall be bound ever thereafter to keep up in good repair and operating condition, the line of said railroad and canal.' Can there be any doubt as to the meaning of this language ? Is it not plain to the comprehension and understanding of men of ordinary capacity and intelligence ? Was it not intended to make it the duty of the purchaser to keep the railroad and canal open as a highway, in good repair and operating condition, for the use and enjoyment of all parties whatsoever ' desiring to use and enjoy the same ?' Can there be the least shadow of doubt as to the meaning of the legislature in declaring that said railroad and canal shall be and remain for ever ' a public highway,' and that the same shall be kept up in good repair and operating condition, for the use and enjoyment of all parties desiring to use and enjoy the same ? Does it need an Act of Assembly to teach us what these words mean, and what the legislature intended by their use ? One would hardly think so ; and yet, for some reason or other, the legislature of 1864 seems to have thought that there might have been some doubt as to their true intent and meaning ; and in order to remove the doubt, to make their true intent and meaning plain, they passed an act entitled, ' An Act relating to certain canals,' approved May 3d 1864." The judge here quoted the act.

" Now, what is the meaning of this explanatory act, this ' Act relating to certain canals ?' Does it mean to declare that it was not ' the true intent and meaning of the fifth section of the Act of 1857,' that the purchaser shall be bound to keep up in good repair and operating condition, the line of said railroad and canal, for the use and enjoyment of all parties desiring to use and enjoy the same, or that it should not be and remain a public highway, as provided in the original act ? It does not in terms so declare. Does it mean, as contended, that the purchaser is only bound to keep the canal in the same condition as the company received it at the time of its sale and transfer by the state ? If at that time the canal was, in point of fact, in the condition in which it has been described by the defendant's counsel, that is to say, ' in a bad, dilapidated condition—dilapidated to the last degree,' does it mean that the purchaser was only bound to keep it in that condition ? [If the canal was wholly out of repair in some portions, and totally unfit for navigation, did the legislature of 1864 intend to declare that the whole duty of the purchaser, under the Act of 1857, would be performed and discharged by keeping the canal in the same dilapidated and ruinous condition, and that their whole and only duty was to prevent it from falling into further ruin and decay ? Whatever may have been the purpose and intent of the framer of this explanatory act, I cannot think that it was the intent of the legislature in passing it, or that this is its meaning.] We cannot impute to the legislature any such absurdity as to suppose that they intended that if any portion of the canal was out of repair and unfit for use at the time of its sale and transfer to

the company, the purchaser, although expressly required to keep it open as a highway for the use of all persons desiring to use it, might allow it to remain in that unfit and ruined condition for ever. What then is the meaning of this explanatory act? Was it intended to lower the standard of duty imposed by the original act, or was it intended to define the duty with more precision and with greater certainty, without lowering the standard? [It seems to me that if the legislature had intended to lower the standard, and to relieve the company from the duty imposed on it by the original act, they would have said so in plain and express terms, leaving no room for doubt as to their meaning. It would have been easy for the legislature, if they had so intended, to declare that the purchaser shall not be bound to keep the canal or any part of it in a better condition than it was at the time of its sale and transfer by the state. But the legislature did not so declare.] Nor did they declare that the purchaser shall not be bound to keep the canal in good repair and operating condition. If, then, the legislature did not intend to relieve the company from the duty imposed by the original act, of keeping the canal in good repair and operating condition, they must have intended to define more specifically the duties imposed by that act. Whether they have succeeded in making the meaning of the provision more plain and palpable to our understanding and apprehension, or whether they " have darkened counsel by words without knowledge,' may perhaps admit of doubt; but as we have seen, the legislature of 1864 does say that the Commonwealth (by the fifth section of the Act of May 16th 1857), ' does require the purchasers of the main line to keep the canals referred to in said section in a condition of repair and fitness for use which shall, at all times during seasons of navigation, be equal to, and not inferior to, the condition of repair and fitness for use in which the same were at the time the Commonwealth delivered the same into the purchasers' possession.' This is a declaratory act, and taking it in connection with the original, the meaning of the whole would seem to be that it shall be the duty of the purchaser to keep up the canal in good repair and operating condition: that ' the condition of repair and fitness for use,' shall, ' at all times during seasons of navigation, be equal to, and not inferior to, the condition of repair and fitness for use in which the same was at the time the Commonwealth delivered it into the purchasers' possession.' But 'the said canal shall be and remain a public highway, and be kept open and in repair by the purchaser, for the use and enjoyment of all parties desiring to use and enjoy the same.'

" It was then the duty of the company to keep the canal in good repair and operating condition ; and if any portion of it was out of repair and unfit for use, at the time of its transfer by the state, it was the duty of the company to put it in a proper condition of

[Pennsylvania Railroad Co. *v.* Patterson.]

repair, so as to render it navigable and fit for use. And this duty attached to the company and became binding on it as soon as it received possession of the canal. The duty was immediate as it respects the obligation, though it was not as it respects the time of its performance. If the mechanical structures of the canal, the dams, locks and gates were in the state of decay and ruin described by some of the witnesses, and if the pools and levels were obstructed with mud, gravel and debris, brought down by the flood, it is manifest that the canal could not be put in good repair immediately and at once. A work of such magnitude and difficulty, would require time for its completion; but it was the duty of the company to begin the work as soon as it was reasonably practicable, and prosecute it with diligence and vigor until it was finished. It was their right and duty to employ skilful and competent engineers to examine the canal, in order to ascertain its condition, and, if found to be out of repair and unfit for use, to report the nature and character of the repairs necessary in order to render the canal navigable and fit for use. The company would then be entitled to a reasonable time in which to make the necessary repairs, and it would be their right and duty so to perform the work as to cause as little interruption to the navigation as possible, consistent with reasonable and proper diligence in the prosecution of the work. If, then, the company commenced making the repairs as soon as it was reasonably practicable, if it prosecuted the work with diligence, and completed it within a reasonable time considering its magnitude, the difficulty of procuring the necessary workmen and materials, and the exigencies of the navigation, then the company was not guilty of negligence, but performed the whole duty imposed upon it by the law, and is not responsible for the loss sustained by the plaintiff in consequence of the bad condition of the canal. The gist of the plaintiff's action is the alleged negligence of the company in not keeping the canal in good repair and operating condition; and if the company was guilty of no negligence, it is not to be visited with the plaintiff's losses, though occasioned by the want of repair and bad condition of the canal. Nor is the company responsible for the consequences of unavoidable accidents to the canal, caused by sudden storms and floods (unless they might have been prevented by the exercise of reasonable skill and diligence in keeping the works in proper repair), if they were repaired as soon as it was reasonably practicable. But if the company did not commence the work of repair within a reasonable and proper time, considering all the circumstances of the case, or if they did not prosecute it with reasonable and proper skill and diligence, and if the plaintiff sustained loss and damage by reason of the defendant's default and negligence in this respect, then he is entitled to recover such damages as he may have sustained.

[Pennsylvania Railroad Co. *v.* Patterson.]

" These instructions embrace the main points presented by the counsel on both sides in this case, and *all* the points will now be read and specifically answered.

" The plaintiff's 1st and 2d points are:

" ' That it was the duty of the Pennsylvania Railroad to keep up the canal purchased from the Commonwealth in good repair and operating condition for the use and enjoyment of all parties desiring to use and enjoy the same.

" ' That if the jury believe that the company failed to perform said duty, the plaintiff is entitled to recover compensation for such damages as he has actually sustained by reason of such default.'

" We have already instructed the jury substantially as requested in these points, and they are affirmed.

" The defendants' 1st point is as follows:—

" ' That the defendants, as the purchasers of the canal between Hollidaysburg and Columbia, were not bound immediately to bring into good operating condition the dilapidated and decayed canal, which had been transferred to them by the Commonwealth under and by virtue of the Act approved May 16th 1857.'

" This point is affirmed.   The court have already so instructed the jury in the general charge; which the jury will bear in mind.

" ' 2d and 3d points: That the defendants were only bound to keep up the canal in as good repair and operating condition as it was at the time it was received by them from the Commonwealth.'

" ' That the Act of Assembly " relating to certain canals," approved May 3d 1864, is an act declaratory of the duties of the parties to the contract at the time it was entered into by the defendants; and the standard of their duties is fixed by the state of the repair and fitness for use in which the canal was at the time the Commonwealth delivered possession of the same to the defendants.'

" I have refused so to charge the jury in the general charge: And those points are both declined.

" ' The 4th point: That the defendants are not liable for any interruption to navigation in consequence of injuries done by the floods of November 1861, or of March 1865, or of any freshets or accidents causing breaks to the canal or to any of the mechanical works or structures thereof.'

" This point is affirmed, with the qualifications stated in the charge, namely, that these injuries could not have been prevented by the use of proper skill and diligence on the part of the company, and that the breaches were repaired in a reasonable and proper time.

" ' 5th. That if the jury believe that the defendants consulted their engineers, and, acting under their advice, made such repairs
23 P. F. SMITH—32

[Pennsylvania Railroad Co. *v.* Patterson.]

to the canal and works as in their judgment were from time to time necessary to keep the same in good repair and operating condition, the defendants are not liable for any injury which the plaintiff may have sustained.'

" This point is affirmed, if the jury find that the work was done with reasonable care, diligence and skill, and within a reasonable time : which you will determine from all the evidence in the case.

" ' 6th. That the obligation imposed upon the defendants by the Act of 1857, did not require them to alter, enlarge, deepen or otherwise improve the canal.'

" This point is affirmed. The act only required the purchaser to keep up the canal as originally constructed, in good repair and operating condition.

" ' 7th. That the defendants are not liable for any interruption to navigation caused either by drought or other unavoidable cause.'

" This point is affirmed unless the consequences of the drought could have been prevented by the exercise of proper care and skill on the part of the company.

" ' 8th. That the defendants are not liable to compensate the plaintiff for any additional tonnage which his boats, under any circumstances, might have carried ; but only for such tonnage as the evidence shows was offered to him, and which was refused by him in consequence of the neglect of the defendants to keep a sufficient supply of water in the canal.'

" That point I affirm.

" ' 9th. That the defendants are not liable for the suspension of navigation if and whenever it became necessary for making repairs either to the canal or to any of the mechanical structures thereon.'

" This point is also affirmed.

" It will be the duty of the jury to apply the law, as laid down by the court in the charge and in answer to the points submitted by the counsel on both sides, to the facts of the case as you shall find them from all the evidence. If you find that the company commenced the work of repairing the canal as soon as it was reasonably practicable, considering all the circumstances of the case, and that it prosecuted the work with proper diligence and skill, and was guilty of no default or negligence in this behalf, then it will be your duty to find for the defendant, without reference to the loss sustained by the plaintiff, in consequence of the bad and unnavigable condition of the canal. But if the jury find that the company was guilty of negligence in not making the proper repairs, and that it improperly and wrongfully suffered the canal to be out of repair for an unreasonable time and for a longer period than necessary, and if the plaintiff suffered loss and damage in consequence thereof, then he is entitled to recover such damages

[Pennsylvania Railroad Co. *v.* Patterson.]

as will compensate him for his loss and make him whole. And this would include interest on his losses from the time they were sustained.

"Upon the question of damages, the court has been requested to charge the jury as in plaintiff's third point:

"'On the measure of damages, if the plaintiff is entitled to recover, the learned judge is requested to charge; 1st. In cases of detention, the loss suffered by the expense of hands, horses, provisions consumed, and loss of the use of the boats during the period of detention, would properly be allowed. 2d. In case of damage to the boats and tackle caused by defective locks, shallow water or other defect, producing unusual wear and tear, the damages thus sustained would be properly allowed. 3d. In cases of injuries caused by difficult and delayed navigation owing to the negligence of defendant, the loss of ability to carry freight, if offered, and extra lengths of voyages, would be the subject of just compensation. 4th. If by such detentions a trip which could, in a proper state of repair, be made in a certain time should be prolonged for some days, the expense of the boats, horses, hands and provisions for this extra time would be properly allowed.

"'5th. If, in consequence of this difficulty of navigation, caused by defendant's negligence, a boat was compelled to forego a full load, it had offered to it, or certainly could have had, and to take so much less, the net amount of the freight thus lost would be a proper allowance.

"'6th. If, for the same reason, the plaintiff was compelled to take two boats, to carry a load which otherwise he would have carried in one boat, the expense of the extra boat, horses, hands and provisions, would be properly allowed.

"'7th. If, for the same reason, the plaintiff was compelled to hire extra teams of horses, and hands on his boats, to enable them to make their trips, he is entitled to his actual expenses and losses, and all other losses which he has proved were the legal, natural and immediate consequences of the neglect of the defendant.

"'8th. The plaintiff is entitled to interest from the date of each loss which he has sustained, up to this date.'"

"That point is affirmed. The jury will take all the matters suggested here into consideration, if they find that the plaintiff is entitled to recover. The jury will find their verdict on the evidence in the case, giving to the testimony of each witness its proper weight and value, and also the proper weight or value to the other evidence in the cause.

"It is the duty of the jury to find their verdict on the evidence, and on the evidence alone, in conformity with the principles of law applicable thereto, as laid down by the court, without fear, favor or affection."

"These are all the instructions that the court have to give you

[Pennsylvania Railroad Co. *v.* Patterson.]

on this case. It will be your duty to apply them to the evidence and to the facts as you shall find them. And I do not deem it necessary to recapitulate the evidence. This trial has lasted so long, and been so thorough, you have had so long a time to reflect upon the evidence, that it undoubtedly has made its proper impression upon your minds.

"You know the complaint here. You will first ascertain what was the condition of the canal when it passed into the possession of this company. Was it or was it not out of repair? Was it in a dilapidated condition? If it was, it was the duty of the company to repair it. But if it was greatly out of repair along the whole length of its line, it was not a work which could be performed in a day or in a week or in a month, and the company had a right to a reasonable time within which to have it first inspected along its whole line by competent engineers, in order to form an estimate of what was necessary to be done; and before they did anything, it was very proper for them to send engineers along the line to examine the state of the canal, and to report its condition, and see exactly what was necessary to be done in order to put it into proper order. Now, did the company do that? And after the engineers had had sufficient time to ascertain that, to a reasonable time within which to begin the work. Did they commence within a reasonable time afterwards to do the work, considering the difficulty of procuring materials, of procuring workmen, and the state of the season, and all that. Did they commence within a reasonable time to do this work? And did they prosecute it with reasonable diligence and skill? If they did, then they did all that the law required of them.

"It is for you to determine that fact under all the evidence. If you find that the company did prosecute this work with reasonable diligence and skill, why then they did their duty; and, although the plaintiff may have suffered in consequence of losses by reason of the bad state of the canal, it is not a loss which the law will visit on the defendant. He must bear it himself; because, as I have already instructed you, the gist of this action is the defendants' negligence, the company's negligence. And if they were not negligent, then the plaintiff has no right to recover against them. But if you find, looking at the whole of the evidence, that the company did not commence this work as soon as they ought to have done, considering all the circumstances of the case, and that they did not prosecute it with vigor, and that the plaintiff sustained losses in consequence of it, then you will assess those losses according to the evidence as given before you. It is your duty to weigh this case and deliberate well, and to find such a verdict as you think the evidence will justify."

The verdict was for the plaintiff for $16,976.19.

The defendants had the case certified to the court in banc, and assigned for error:—

[Pennsylvania Railroad Co. *v.* Patterson.]

1, 2. The refusal of the judge at Nisi Prius to affirm defendants' 2d and 3d points, and in charging as in the portions of the charge in brackets.

3. The qualification to the answer to defendants' 7th point.

*C. Biddle* and *T. Cuyler*, for plaintiffs in error.—The Act of 1864 is to be taken in its natural construction, Dwarris on Stat. 703, which is that the canals, &c., were to be kept in a condition equal to that in which the defendants found them when they purchased them : Notley *v.* Buck, 8 B. & C. 164; Horton *v.* Mobile School Comm'rs., 43 Ala. 598.   The intent is to be discovered from the language used: Woodbury *v.* Berry, 18 Ohio R. 456; Bennett *v.* Boggs, 1 Baldwin 74.   They cited also, Philadelphia *v.* Gray's Ferry Railway, 2 P. F. Smith 177; Dequindre *v.* Williams, 31 Ind. 444.   Even if retroactive the Act of 1864 does not violate a contract; it is therefore not unconstitutional: Gault's Appeal, 9 Casey 94; Schenley *v.* Commonwealth, 12 Id. 29; Kenyon *v.* Stewart, 8 Wright 191.   The contract created by the Act of 1857 was between the Commonwealth and the Railroad Company exclusively: Mott *v.* Penna. R. R., 6 Casey 34; Commonwealth *v.* Penna. Can. Co., 16 P. F. Smith 55.

*J. Thomas* and *W. L. Hirst*, for defendants in error.—1. In the Act of 1857, the legislature took care to stipulate for the preservation of the rights of the public, to the use of the canal, &c., as a public highway.

2. It was the common-law duty of the defendants, who owned this canal, and took tolls from boats, to a navigable canal for the passage of boats : Borland *v.* Nichols, 2 Jones 42.

In the construction of statutes granting privileges to individuals, where there is ambiguity or inconsistency in the language of the grant, if one construction bear against the public trade and public convenience, and another abridges the grant, that must be adopted which favors the public convenience and trade : Stormfeltz *v.* Manor Turnpike Co., 1 Harris 560.

Unless in case of strong repugnancy, one Act of Assembly will not be construed to repeal another: Street *v.* Com., 6 W. & S. 209.   The legislature could not direct the courts how to interpret the Act of 1857 : Pennsylvania Railroad Co. *v.* Canal Commissioners, 9 Harris 21; Reiser *v.* William T. M. S. F. Association, 3 Wright 143; O'Conner *v.* Warner, 4 W. & S. 227; Haley *v.* Phila., 18 P. F. Smith 47; Lambertson *v.* Hogan, 2 Barr 25; Greenough *v.* Greenough, 1 Jones 495.

Judgment was entered in the Supreme Court, January 27th 1873.
PER CURIAM.—Judgment affirmed on the charge of the judge at Nisi Prius.