Heilwood Fuel Co., Inc., Appellant, *v.* Manor
Real Estate Company,
Appellant.

320

Argued October 6, 1961. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*John A. Metz, Jr.,* with him *Metz, Cook, Hanna &
Kelly,* for plaintiff.

*Thomas. D. Thomson,* with him *Pringle, Bredin &
Martin,* for defendant.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, December 5, 1961:

Two appeals are before us, each appeal being from an order of the Court of Common Pleas of Allegheny County, sitting in equity. One appeal (No. 148) by Heilwood Fuel Co., Inc. (Heilwood) challenges the validity of this order insofar as the order sustained preliminary objections of Manor Real Estate Company (Manor) and dismissed Heilwood's equity complaint. The other appeal (No. 157) by Manor attacks the order insofar as the order amended a previous order which had certified to the law side of the court an alleged claim of damages by Heilwood.[1]

In Pine Township, Indiana County, Heilwood and Manor each owned certain tracts of land under which lay coal. Manor had acquired its tract from Willmore Coal Company.

On January 31, 1956, Manor wrote a letter to Pine Township Coal Company, Inc. (Pine) and the construction and interpretation of this letter is the heart of this controversy. That letter, described as a "letter of intent" which, if accepted by Pine, would become an "interim understanding and agreement", is divided into two parts, one entitled *"Exchange"* and the other *"Lease"*. Under the *"Exchange"* heading, the parties provided for the exchange of certain properties, the exchange to take place by June 30, 1956: (1) subject to approval of the respective titles, Manor agreed to convey to Pine and Pine agreed to convey to Manor owner-

---

[1] On January 27, 1961, the court en banc dismissed Heilwood's complaint but certified "the allegations of the complaint pertaining to damages" for timber cutting to the law side of the court. Heilwood, taking the position it had *not* asked for damages, moved to amend the order and, on March 17, 1961, the court amended the order and struck out the provisions as to certification to the law side of the court. Manor contends the amended order is invalid inasmuch as it was made by one judge and not the court en banc.

ship in certain properties delineated on a map attached to the letter; (2) in the exchange it was intended that gas and oil rights be reserved and that the areas to be conveyed be equal as to coal and surface acreage; (3) in the event Manor did not convey to Pine, Manor's property would be included in the *"Lease"* provision. Under the "Lease" heading: (1) Manor agreed to lease to Pine certain coal seams under a 1650 acre tract of land not included in the "Exchange" heading, the lease to be prepared and submitted for execution within 60 days of the exchange of properties between Manor and Pine, i.e., June 30, 1956; (2) the provisions of the contemplated lease were set forth; (3) it was provided that the coal mined and shipped should be routed over lines of the Pennsylvania Railroad.[2] It is stated by Manor, in its brief, that the principal purpose of this letter "was the development of the Yellow Creek Coal Field and the production of coal for shipment via The Pennsylvania Railroad". On February 5, 1956, Pine, in writing, accepted this "interim understanding".

In returning to Manor the approved "interim understanding" on February 16, 1956, Pine stated, inter alia, that "all parties interested" understood that Heilwood, "an allied company" of Pine, owned the properties which were to be exchanged to Manor and that Pine was "in a position" to *guarantee* performance of that part of the contract.

On March 4, 1956, the Pennsylvania Railroad Company, Real Estate Department (Pennsylvania), wrote to Pine, the *stated* subject of this letter being: "Proposed exchange between [Manor] and [Heilwood]". That letter, referring to the abstracts of title and descriptions of the property which Manor was to convey, assured Pine such documents would be available to Pine's lawyers.

---

[2] Although not clarified of record, Manor is an affiliate of Pennsylvania Railroad.

According to Heilwood's complaint, after the "interim agreement" was entered into, by mutual consent, Manor took possession of Heilwood's property and Heilwood took possession of Manor's property and each remained in possession of the other's property until the equity action was filed; in February 1956, Manor leased to a coal company part of a seam of coal under Heilwood's property, together with a right of way over the surface, and the coal company has both used the right of way and mined coal; Manor has removed and sold timber from Heilwood's property and Heilwood has done likewise on Manor's property.

Completion of the undertakings in the "interim agreement" were delayed because Pine, under Chapter XI of the Bankruptcy Act, had entered into a plan of arrangements with its creditors. Finally, the Pittsburgh District Director of Internal Revenue on February 24, 1959, by letter notified Pine that, since the property exchange under the "interim agreement" would be between Heilwood and Manor, who were not Pine's subsidiaries, approval of the property exchange by the District Director was unnecessary. Four days later, Heilwood's counsel wrote Pennsylvania, enclosing a copy of the District Director's letter, stating that, since this was "the only barrier to the completion of the long contemplated exchange of coal and surface", it, Heilwood, hoped the exchange could be accomplished at an early date. In response to this letter, several days later, Pennsylvania's counsel wrote to Heilwood's counsel stating, inter alia: "As there does not appear to be any further legal impediments, the necessary documents to effect the transfer will be prepared by Manor toward the end that this exchange may be completed as soon as possible." Very significantly, Pennsylvania's counsel then stated: *"In accord with our prior understanding, nothing further will be done at this time in respect to the leasehold interests"*.: (Emphasis supplied.)

Approximately eight months later—November 25, 1959—Manor wrote Heilwood's counsel forwarding a copy of the proposed Manor-Heilwood deed and a copy of the proposed Heilwood-Manor deed for comments or approval, enclosing certain notations by Manor as to the deed descriptions. Three weeks later Heilwood's counsel wrote to Manor, under the heading "Exchange of lands between [Heilwood] and [Manor]", and returned the several deed drafts, stating, "I [Heilwood's counsel] have endorsed approval of [Heilwood] on the back of the deed form [Manor to Heilwood] . . ." and advised that a blueprint of a certain map should be added to the Heilwood-Manor deed.

The record is silent as to anything which thereafter transpired between Manor and Heilwood, or Manor and Pine, except that the complaint avers that Manor refused to exchange its property for that of Heilwood.

On May 20, 1960, Heilwood instituted an equity action in the Court of Common Pleas of Allegheny County against Manor seeking to have that court direct Manor to exchange its property for that of Heilwood. Manor, by preliminary objections, attacked Heilwood's complaint in three respects: (1) that no cause of action was stated; (2) that the complaint shows an agreement between Manor and Pine, not between Manor and Heilwood; (3) that the agreement was entire and not severable and Heilwood cannot seek specific performance of only part of the agreement, i.e., the exchange of properties, and not the lease portion of the agreement. On February 27, 1961, the court en banc dismissed Heilwood's complaint on the ground that "the exchange of properties and the leasing provisions of the agreement are interdependent and not severable [and that Heilwood] is not entitled to specific performance of one phase of the agreement, the property exchange provisions, and completely overlook the provisions relating to the leasing of properties" and, therefore, Heil-

wood failed to state a cause of action. From the order dismissing its complaint, Heilwood had appealed.

In its original order the court certified the question of damages for the cutting of timber on Heilwood's property to the law side of the court. Heilwood then moved the court to amend its order by removing therefrom certification of the question of damages to the law side of the court on the ground the complaint sets forth no claim for damages for removal. On March 17, 1961, the court did so amend the original order; from that action of the court Manor has appealed.

Consideration first will be given to Heilwood's appeal. In such consideration two rules must guide us: First, in the posture in which this litigation is presented—preliminary objections to an equity complaint —we must accept as true all facts, as distinguished from conclusions of law, which are well pleaded in the complaint; second, we can sustain the preliminary objections and thus dismiss Heilwood's claim *only* if the complaint *clearly* fails to set forth a cause of action: *Savitz v. Weinstein*, 395 Pa. 173, 174, 149 A. 2d 110; *Gardner v. Allegheny County*, 382 Pa. 88, 114 A. 2d 491.

On its face the "interim agreement" purports to be a contract *only* between Manor and Pine. However, it is clear from Pine's letter of transmittal of the approved "interim agreement" to Manor that Manor *knew* that the property to be traded to it was owned not by Pine but by Heilwood and that Pine was *"in a position"* to guarantee that Heilwood was exchanging its property. Such knowledge must have brought notice to Manor that there was *some* relationship between Pine and Heilwood; otherwise, Heilwood would turn over its property to Manor and Manor would turn over its property to Pine and Heilwood would receive nothing out of the arrangement, a bizarre and unrealistic result.

Furthermore, the complaint alleged that Heilwood was "an allied[3] company" of Pine and avers that, immediately after approval by Pine of the "interim agreement", it was Heilwood, not Pine, which, with Manor's knowledge and consent, took possession of Manor's property. Is it likely that Manor, if it was dealing with Pine in a nonrepresentative capacity, would have permitted Heilwood, a stranger eo nominee to the agreement, to enter into and remain in possession of its property for upwards of four years? In addition, the correspondence attached to the complaint clearly shows that Manor construed the agreement as contemplating an exchange of property between Manor and Heilwood, not Manor and Pine, and Manor's counsel dealt directly with Heilwood's counsel in connection with that portion of the agreement providing for the property exchange. While perhaps the relationship between Pine and Heilwood could have been more artistically pleaded, on the posture of this record there is sufficient pleaded to indicate that Pine was acting for Heilwood in the exchange portion of the agreement. If Heilwood can prove the facts averred and that Pine was acting for it in the exchange provisions of the agreement, then, either as a disclosed or undisclosed[4] principal, Heilwood could sue for specific performance of the exchange provisions of the agreement. Although not a party eo nominee to the agreement, if Heilwood's averments *can* be proven, then Manor knew or should have known Pine was acting for Heilwood in making this agreement, at least the exchange provisions thereof.

The court below rested its decision on the ground that the agreement was entire and not severable and

---

[3] To be "allied" is to be "united", "joined", "connected with": The Oxford English Dictionary, Vol. I, p. 235.

[4] *F. & M. National Bank v. King*, 57 Pa. 202, 205; *Frazier v. The Erie Bank*, 8 W. & S. 18; *Peoples Bank, etc. v. McDowell National Bank*, 307 Pa. 247, 161 A. 203.

that Heilwood could not seek specific performance of the exchange provisions without the lease provisions. It is often most difficult to determine whether a contract is entire or severable. The primary inquiry in resolving this question is whether the language employed in the contract clearly indicates the intention of the parties that the contract be considered entire or severable (*Easton v. Jones,* 193 Pa. 147, 44 A. 2d 264) ; only in the absence of a clear indication of the parties' intention from the language of the contract may resort be had to rules of construction (*Producers Coke v. Hillman,* 243 Pa. 313, 90 A. 144).

We must, therefore, look to the language of the agreement as such may or may not illuminate the parties' intention. In the recital to the agreement, Manor states it has acquired a certain coal field and that "[c]ertain areas on this coal field have been the subject of negotiations, both exchange and lease, between [Pine] and [Manor]" and that Manor is advised that Pine has "plans for early development of some of the coal which would be *leased or traded* to [Pine]." The agreement then contemplates *both* an exchange of certain lands between Pine and Manor (lands which Manor knew Pine did not own) and a lease of certain coal seams under another 1650 acre tract of land. The lease was not to be prepared and submitted for examination until *after* the exchange of lands and then within sixty days of that date.

The agreement makes a sharp division between the "Exchange" provisions and the "Lease" provisions; the consideration for the property exchange lies in the mutuality of the trading, while the consideration for the lease is the payment of the stated royalty; while Manor clearly seeks the early development of the coal lands to be leased *or* traded it is to be noted that, as to the lands to be traded, nothing is stated as to the requirement of mining the coal under said lands, while, as to the

lands to be leased, lessee is under an obligation to strip and mine 12,000 tons per month; while concededly the principal purpose of the agreement was to enhance coal traffic on the Pennsylvania Railroad it is only the lease which provides for the shipment of coal over Pennsylvania Railroad lines. Unlike the court below we find nothing in the *language* of this agreement which clearly reveals the intention of the parties that the agreement was entire, not severable; in fact, the language of the agreement is ambiguous in this respect.

In view of this ambiguity we are obliged to seek other aids in construing the parties intent. One such aid may be termed the "practical interpretation", i.e., the construction placed upon the agreement by the conduct of the parties: *Alpha Claude Neon Corporation, etc. v. Pennsylvania Distilling Co.,* 325 Pa. 140, 188 A. 825; *Sternbergh v. Brock,* 225 Pa. 279; *Maguire v. Osborne,* 384 Pa. 430; *Hempfield Twp. School District v. Cavalier,* 309 Pa. 460, 164 A. 602. First, without any lease of the coal under the 1650 acre tract or an attempt toward compliance with the lease provisions and, in fact, long before such lease was to be submitted for execution, Heilwood entered into possession of Manor's land and sold off timber and Manor entered into possession of Heilwood's land and permitted its lessee to use part of surface and to mine coal. In the second place, Pennsylvania's counsel, acting for Manor, notified Heilwood's counsel that "nothing will be done at this time in respect of the leasehold interests". Third, the present posture of the record indicates nothing which could be construed as a "no lease, no exchange" attitude on Manor's part, but just the contrary. The conduct of the parties certainly indicates a severability of the exchange and lease provisions of the agreement. Another aid in the construction of the parties' intent is a rule of construction that the character of the consideration may determine the severability of the contract.

"It has been stated that if the consideration is single the contract is entire [*McClurg v. Price*, 59 Pa. 420] whatever the number or variety of items embraced [*U. S. Water Works Co. v. Borough of DuBois*, 176 Pa. 439, 35 A. 251; *Semple v. Cleveland & P. R. Co.*, 172 Pa. 369, 33 A. 564; *Cleaver v. Garner*, 133 Pa. 419, 19 A. 408], but if the consideration is apportioned, either expressly or by necessary implication [*Lucesco Oil Co. v. Brewer*, 66 Pa. 351], the contract will generally he held to be severable [*Crawford v. McKinney*, 165 Pa. 605, 30 A. 1045; *McLaughlin v. Hess*, 164 Pa. 570, 30 A. 491]." 8 P.L.E., Contracts, §§142, 178. The consideration for the *Exchange* premium is entirely different from the consideration for the *Lease* provisions: the former is the conveyance of Heilwood's property to Manor and vice versa; the latter is the payment of royalty to Manor. Such variation in consideration points to the severability of this agreement.

Viewing the terms of the agreement as a whole, aided by the events which took place and conduct of the parties subsequent to the agreement, in our view this is a severable, not an entire, contract. Any other conclusion would ignore the realities of the situation. We perceive nothing in this agreement which precludes, on the present posture of the record, Heilwood from seeking specific performance of the exchange provisions of the agreement.

We do not say that Heilwood *should* ultimately prevail; all that we now say is that the averments of the complaint, together with the attached exhibits, sufficiently state a cause of action so that Heilwood, if it can prove its averments by competent and sufficient evidence, *could* prevail. Certainly the instant record is not so clear and free from doubt as to justify dismissal of this complaint and deprive Heilwood of its right to be heard. The order of the court, subject of appeal, No. 148, is reversed.

In view of our disposition of appeal No. 148, it might be unnecessary to consider the subject of appeal No. 157 which seeks, on another ground, reversal of the same order. However, for the sake of clarification of this phase of the litigation and perhaps avoid subsequent appeal once this matter reaches final conclusion in the court below, we shall briefly consider the question raised by Manor as to the court's order.

Manor's appeal is based on an amendment made by the court to its original order. In its original order, the court below, under the impression that Heilwood's complaint sought damages for the cutting of timber on its land, directed submission of that question to the law side of the court. On a motion for reconsideration of this phase of the order, the court, realizing the complaint did not seek damages for the cutting of timber, amended its order and deleted that portion thereof relating to the certification of the claim for damages to the law side of the court.

Manor argues that the original order was by the court en banc, that the argument on the motion to amend was before Judge BROSKY alone and that Judge BROSKY, a single member of the court en banc, amended the order. *Such argument lacks factual support on this record.* The opinion upon which the amended order is based indicates it was handed down for the *entire* court en banc—Judges ELLENBOGEN, WEIR and BROSKY—by Judge BROSKY. We find no merit in Manor's appeal.

Order reversed. Costs to abide the event.

Mr. Justice COHEN dissents.