Maloney *v.* Glosser (et al., Appellant).

Argued April 27, 1967. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

argument refused December 15, 1967.

*Abraham L. Shapiro,* with him *Norman C. Henss, S. R. DiFrancesco, Sr.,* and *Cohen, Shapiro, Berger, Polisher and Cohen,* and *DiFrancesco and DiFrancesco,* for appellant.

*James Francis O'Malley,* with him *Yost & O'Malley,* for appellees.

*Seymour S. Silverstone,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, November 14, 1967:

This is an action in equity by participants of a profit-sharing trust against Daniel Glosser and Lester D. Edelstein (Trustees), and against William H. Glosser and Samuel H. Cohen, as individuals. An injunction is sought against the trustees, prohibiting them from paying out any funds except on the basis of the schedule felt by plaintiff-appellees to be correct. Furthermore, as incidental to the injunctive relief, an order compelling the repayment by William Glosser, of $39,094.31, paid to him under a different schedule, is sought. The court below, after dismissing, on prelimi-

nary objection, the suit against Samuel Cohen, filed an adjudication and entered a decree nisi granting the injunction and compelling the repayment of the funds. This appeal followed the dismissal of appellant's exceptions and the entry of the decree nisi as a final decree.

The trustees, although in form a defendant, are neutral in the case, merely asking that the court interpret the trust agreement. William Glosser is the appellant. He contends that the court below erred both in taking jurisdiction of the case and in reaching its decision on the merits.

Appellant claims that equity has no jurisdiction to compel him to repay the funds. We do not agree. The court below based jurisdiction on a number of grounds; one was that Glosser had breached his duties as trustee; another was that the suit was a derivative action, with plaintiffs suing for the trustees. We do not have to consider those grounds, for we find that jurisdiction can be sustained on the basis of incidental relief. Although the claim against William Glosser is one cognizable at law, it is incidental to the injunction against the trustees. The court below was, therefore, correct in retaining jurisdiction, and settling both issues in the same case.

A finding of incidental jurisdiction of the legal issue requires proper equity jurisdiction in the first instance. *Cella v. Davidson,* 304 Pa. 389, 156 A. 99 (1931). Appellant argues this is lacking here, i.e., that the injunction was improperly granted. It is contended first, that Samuel Cohen and other participants in the trust were indispensable parties; and secondly, that injunctive relief is improper because harmful action is not imminent. Once again, we are compelled to disagree. There has been no failure to join an indispensable party, one whose rights are so connected with the claims of the litigants that no decree can be made be-

tween them without impairing such rights. As to the other participants in the trust, to whom benefits will inure from a recovery from Glosser, there is no failure to join them, since paragraph 4 of the complaint indicates the action is brought on their behalf. As to Samuel Cohen, a party to an agreement similar to that under which Glosser was paid, this decree does not preclude his seeking relief in another action.

Nor can we accept the argument that injunctive relief was improper because the threatened harm was too remote. *Kelly v. Philadelphia*, 382 Pa. 459, 115 A. 2d 238 (1955). The cases appellant cites are nuisance cases, inapposite here. But in any event, the danger was not remote. Samuel Cohen had an agreement that he was to be paid according to Glosser's interpretation of the trust. Although he had not yet sought payment, it is unreasonable to presume that he would not seek to enforce that agreement, paying him on the basis of sixteen years service, as opposed to the six he would be entitled to under appellee's interpretation.

That brings us to the merits of the controversy. The question revolves around the interpretation of the words "continuous employment" in paragraph 9 of the trust agreement, providing that resignation benefits are to be "determined by the length of his continuous employment". Appellant reads "continuous employment" to mean uninterrupted (with some exceptions not relevant here) service from the date of first employment with the company. Appellant bases his argument on the fact that the same term, "continuous employment", is used in paragraph 2 of the trust agreement, where those eligible for participation in the profit-sharing plan are described. It is admitted by all concerned that in paragraph 2, the term does have the meaning opted for by appellant.

Appellant then relies on the maxim of contract construction that ". . . a word used by the parties in one

sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons". 3 Williston, Contracts (Rev. ed. 1936) §618, p. 1780. Here, however, there are countervailing reasons. An agreement must be read so as to make sense. The purpose of a profit-sharing plan is to induce employees to remain for the future. Thus, benefits are made contingent upon years of service. Although it may appear inequitable that years of service prior to the adoption of the plan do not count toward benefits, from a business standpoint, there is no reason why they should count. The employee has already remained with the company, and it is thus unnecessary to give him inducements for those past years.

The court below read "continuous employment" to exclude service prior to the date of the plan, and we think the court's interpretation to be an entirely reasonable one. Obviously, the trustees felt so too, as they required an indemnification agreement from Glosser in the event of surcharge for improper payment, and with regard to five other resigned employees, seemed at least tacitly to adopt the interpretation of the appellees and the court below. Moreover, the present trustees have stated that they intend to make payments in the future consistent with the interpretation found by the court below to be correct. The construction placed upon an agreement by the parties thereto is entitled to weight where the contract is ambiguous. *Heilwood Fuel Company v. Manor R. Estate Co.*, 405 Pa. 319, 175 A. 2d 880 (1961). We cannot agree with appellant that the meaning of the term "continuous employment" is so clear that we may not resort to the parties' interpretation for aid. Therefore, we hold that the interpretation of the court below was proper.

Finally, we see no merit in appellant's final contention, that the $39,000 figure is too high because William Glosser will be entitled to benefits from the funds

set aside for the future improper payment to Samuel Cohen. If the allocation for Cohen is found at a future date to be improper, it will then be possible for Glosser to recover any amounts due him.

Decree affirmed. Costs to be borne by appellant.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On May 11, 1956, M. Glosser and Sons, Inc., a Pennsylvania corporation, established a profit-sharing trust for the benefit of a certain number of its employees. David Glosser, William H. Glosser and Daniel Glosser were named the trustees in the written agreement setting up the trust. The trust became effective April 13, 1956, the eligibility of employees to participate therein being outlined in Article 2.01 of the Agreement: " 'Each employee is eligible to become a participant on the first participation date of this trust on or before which he shall have completed five full years of continuous employment with the employer."

Subsequently all employees who had completed five years of continuous service with the company as of April 13, 1956 (the effective date of the plan) were notified that they had become beneficiaries under the plan and they executed an acceptance of the terms. William H. Glosser, one of the trustees was one of such employees,[1] Samuel H. Cohen was another.

Samuel H. Cohen resigned on March 31, 1962 after a period of continuous employment of 16 years and a participant of the plan for six years. Following his resignation the trustees entered into an agreement to pay him 100% of the amount in the pension fund standing to his credit.

---

[1] All other employees completing five years of continuous service after the effective date of the plan were admitted to participation on the first participation date following the completion of the five year service.

William H. Glosser resigned in October, 1963 after 33 years of continuous employment and participation in the plan for eight years from its inception. Later, the remaining trustees voted to pay William Glosser 100%, the amount standing to his credit.

Lester Edelstein was appointed trustee to replace William H. Glosser and the trustees then authorized obtaining a loan from the corporation to pay William H. Glosser the benefits due him.

Under Article 9.02 of the plan, a participant who resigns his employment is entitled to "a percentage of the full amount standing to his account . . . determined by the length of his continuous employment as follows:

|  | Vested |
| Number of years | Equity |
| --- | --- |
| . . . | |
| 6 years but less than 7 years | 20% |
| . . . | |
| 8 years but less than 9 years | 40% |
| . . . | |
| 14 years but less than 15 years | 100%" |

and it was on the basis of this schedule that the trustees had voted to award Samuel Cohen and William H. Glosser 100% of the amount standing to their account.

All participants in the plan were notified of the action taken by the trustees. Thomas D. Maloney, Charles Rollman and Joan Mahan, other employees of the M. Glosser & Sons, Inc. who were participants in the plan, discussed this matter with the trustees who stated that William Glosser had been overpaid and that the agreement would not be interpreted in the same way with regard to the other employees.

These employees registered no complaint at the time but after the death of David Glosser, chief executive officer and principal shareholder in the company, they decided to file the present suit in equity against the trustees to enjoin them from paying benefits to Samuel

H. Cohen or to any other person except on the basis
of the number of years the employee had participated
in the plan and not on the total number of continuous
years of employment. The employee-plaintiffs also
prayed that William H. Glosser be required to repay
the benefits he had received in excess of such inter-
pretation of the agreement, stated to be $39,094.31.

Samuel H. Cohen filed preliminary objections which
were sustained by the Court.

The action against William H. Glosser proceeded
to trial and the chancellor entered a decree enjoining
the payment of benefits to Samuel H. Cohen or any
other person including William H. Glosser, in accord-
ance with the interpretation advanced by the plain-
tiffs, particularly directing William H. Glosser to pay
back to the trustees the above mentioned sum of $39,-
094.31. Glosser filed exceptions which were dismissed,
the decree against him was made final and he has ap-
pealed.

The issue before us is a narrow one. In interpret-
ing the amount a participant is to receive upon resig-
nation under the terms of Article 9.02 above set forth,
are we to count the years of continuous employment
from the date he became a participant in the plan?
Stated differently, should Cohen's percentage of bene-
fits upon resignation be based on the 16 years of con-
tinuous employment with the company or on the six
years he was a participant in the plan? Should Glos-
ser's percentage of benefits upon resignation be based
on his 33 years of continuous employment with the
company or on the eight years he was a participant in
the plan?

The answers are to be found in Article 9.02 because
it expressly provides that the employee is entitled to
"a percentage of the full amount standing to his ac-
count . . . determined *by the length of his continuous
employment. . .*" It does not say "as determined by

the number of years he was a participant in the plan" but I repeat, "by the length of his continuous employment". This can only refer to the period of his employment and not to his period of plan participation. Article 9.02 could not be any clearer in its intent to reward the employee for *all* the years of his continuous employment to the company and not merely for the few years he may have been a participant in the plan. Take the case of the employee such as Glosser who had started his employment long before the effective date of the plan and who had given the company the proverbial "best years of his life". The plan was introduced in the later years of his service. Certainly, in all fairness, justice and good law, it could not be intended that this employee's percentage of benefits were to be based only on the few years during which he was a participant in the plan. This is not a plan whereby the employee makes contributions thereto in which case it might be argued he could only get back benefits for the period during which he contributed. We have here a plan where the company made all the contributions to the trust fund for the employees as a profit-sharing measure specifically for the benefit of its employees in consideration of the service rendered them. Obviously, its aim would be to benefit those employees who had rendered long and continuous service, thus, by Article 9.02 it clearly provided that the benefits should be determined by the length of the employee's continuous employment and not by the length of his participation in the plan.

The Majority states "Although it may appear inequitable that years of service prior to the adoption of the plan do not count toward benefits, from a business standpoint, there is no reason why they should count. The employee has already remained with the company, and it is thus unnecessary to give him inducements for those past years." Such reasoning ignores the express

terms of Article 9.02 as already stated and assumes that the company only intended to benefit employees for future service and not for continuous loyal service in the past. Such an assumption is not only unreasonable but is contrary to the express terms of Article 9.02 which the Majority has chosen to interpret in a manner which defies its very language.

According to the documents, the law and fair reasoning, the lower court's decision should be reversed. Since it has not been, I accordingly dissent.