Thomas F. RIBARCHAK d/b/a Fisher Associates, Appellant

v.

MUNICIPAL AUTHORITY OF the CITY OF MONONGAHELA, a Pa. Municipal Authority, Galway Bay Corporation, a Pa. Corporation and Chester Engineers, Inc., a Pa. Corporation.

Commonwealth Court of Pennsylvania.

Argued April 17, 2012.

Decided May 21, 2012.

Robert A. Felkay, Pittsburgh, for appellant.

Robert A. Gallagher, Pittsburgh, for appellees Municipal Authority of the City of Monongahela and Chester Engineers, Inc.

Wesley T. Long, Greensburg, for appellee Galway Bay Corporation.

Richard F. Rinaldo, Pittsburgh, for appellee Municipal Authority of the City of Monongahela.

BEFORE: PELLEGRINI, President Judge, and JUBELIRER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

■ Thomas F. Ribarchak d/b/a Fisher Associates (Fisher) appeals from the June 17, 2011, order of the Court of Common Pleas of Washington County (trial court), which denied Fisher's motion for partial summary judgment and granted the motion for summary judgment of the Municipal Authority of the City of Monongahela (Authority), Galway Bay Corporation (Galway) and Chester Engineers, Inc. (Chester) (collectively, Appellees).[1] We affirm.

The Authority, by and through Chester, solicited bids from various contractors for a renovation project for its sewage treatment plant. Galway submitted a bid for the project and included Fisher as a subcontractor. The Authority awarded Galway the contract on November 16, 2000, pending review of the solicitor, engineer and general manager. On April 16, 2001, more than thirty days after Galway's bid was accepted, Galway requested that the Authority consent to the substitution of Kiski Valley Systems (Kiski) as a subcontractor in place of Fisher. According to the contract drawn up in October 2000, between the Authority and Galway, "[n]o substitutions will be accepted after 30 days from the Contract award date." (Contract, 10/00, ¶ D.5, at D–3; R.R. at 19a.)[2] However, the Authority agreed to Galway's substitution of Kiski for Fisher.

On October 15, 2001, Fisher filed an action against Appellees claiming breach of contract and negligence. Fisher claimed that it had a valid contract with Galway and the Authority because Galway included Fisher in its general contractor's bid to the Authority and the Authority accepted Galway's bid, which listed Fisher as a subcontractor. Subsequently, Fisher and Ap-

---

1. We note that this is a pure contract case brought before the trial court. Although one of the parties is a municipal authority, this court does not have appellate jurisdiction because none of the criteria of 42 Pa.C.S. § 762 is satisfied, i.e., immunity, statute governing the affairs, etc. However, because this case was transferred here from the Superior Court and no party has objected to this court's jurisdiction, pursuant to 42 Pa.C.S. § 704, jurisdiction has been perfected in this court.

While we could still transfer the matter, in the interest of judicial economy and because no objections were raised, we will hear the appeal.

2. We note that the contract does not contain the general contractor's bid proposal, but sets forth the requirements of the Authority for the sewage treatment plant improvements project.

pellees filed cross-motions for summary judgment. On June 17, 2011, the trial court denied Fisher's motion for summary judgment and granted Appellees' motion. Fisher now appeals to this court.[3]

Fisher first contends that the trial court erred in failing to grant it partial summary judgment as to liability because Appellees breached the contract they had with Fisher. We disagree.

In order to form a contract, there must be an offer, acceptance, and consideration or a mutual meeting of the minds. *Yarnall v. Almy,* 703 A.2d 535, 538 (Pa.Super.1997). It is well established that the submission of a bid constitutes an offer and becomes a binding contract when the bid is accepted by the agency. *Muncy Area School District v. Gardner,* 91 Pa. Cmwlth. 406, 497 A.2d 683, 686 (1985).

Here, Fisher made Galway an "offer" by submitting its bid proposal to Galway to do the instrumentation work for the Authority's sewage treatment plant project. The terms of the offer were set forth in Fisher's bid proposal.

The question now before us is whether Galway accepted Fisher's offer. Initially, Fisher contends that Galway accepted Fisher's bid proposal by using it in Galway's general contractor's bid to the Authority and that this acceptance was further confirmed by the Authority's acceptance of Galway's bid, in which Fisher was named as a subcontractor. We disagree.

There are no Pennsylvania cases precisely on point. However, many jurisdictions have rejected the notion that the use of a subcontractor's bid by a general contractor constitutes legal acceptance of the bid. *See, e.g., Finney Co. v. Monarch Construction Co.,* 670 S.W.2d 857, 860 (Ky. 1984); *Cortland Asbestos Products, Inc. v. J. & K. Plumbing & Heating Co.,* 33 A.D.2d 11, 304 N.Y.S.2d 694, 696 (1969); *Plumbing Shop, Inc. v. Pitts,* 67 Wash.2d 514, 408 P.2d 382, 386 (1965); *N. Litterio & Co. v. Glassman Construction Co.,* 319 F.2d 736, 738–39 (D.C.Cir.1963); *Klose v. Sequoia Union High School District,* 118 Cal.App.2d 636, 258 P.2d 515, 517–18 (1953). The general rule is that:

"A subcontractor bidder merely makes an offer that is converted into a contract by a regularly communicated acceptance conveyed to him by the general contractor. No contractual relationship is created between the subcontractor and the general contractor even though the bid is used as a part of the general over-all bid by the general contractor and accepted by the awarding authority."

*Finney,* 670 S.W.2d at 860 (*citing Klose,* 258 P.2d at 517–18).

Our Supreme Court's decision in *Hedden v. Lupinsky,* 405 Pa. 609, 176 A.2d 406 (1962), though not directly on point, is instructive and supports the conclusion that no contract was formed between Fisher and Appellees. In *Hedden,* a subcontractor submitted a telephone bid to the contractor and the contractor sent the subcontractor a contract to sign. This contract differed from the specifications set forth in the subcontractor's proposal. The subcontractor refused to sign the contract

---

**3.** Our review of a trial court's ruling on a motion for summary judgment is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Fogarty v. Hemlock Farms Community Association, Inc.,* 685 A.2d 241, 242 n. 1 (Pa. Cmwlth.1996). Summary judgment is proper when the record demonstrates that no genuine issue of material fact exists after an examination of the record in the light most favorable to the non-moving party. *Green Valley Dry Cleaners, Inc. v. Westmoreland County Industrial Development Corp.,* 832 A.2d 1143, 1150 n. 5 (Pa.Cmwlth.2003).

and did not perform the work. The contractor brought an action to recover the difference between the subcontractor's bid and the next lowest bid. Our Supreme Court stated that the "variances constitute a counteroffer" and, "[t]o constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer." *Id.* at 612, 176 A.2d at 408. The Supreme Court concluded that when the contractor attempted to counter offer, rather than accept the offer, and the subcontractor declined, no contract was formed. *Id.* Thus, we can infer that no contract was formed when the subcontractor submitted its proposal to the general contractor, when the general contractor used the subcontractor's proposal in its bid for the job, or when the general contractor's bid was accepted. *See id.*

■ Here, Fisher made an offer to Galway, but Galway did not expressly accept Fisher's offer. The use of Fisher's bid proposal by Galway in its general contractor's bid and the subsequent acceptance by the Authority of Galway's bid did not amount to Galway's or the Authority's acceptance of Fisher's bid. A contract is only formed when an offer is accepted, and this record is void of any evidence that Galway or the Authority conveyed to Fisher an acceptance of its offer. We conclude that the trial court did not err in determining that there was no contract between Fisher and either Galway or the Authority and, therefore, there was no contract between them for either to breach.

■ Next, Fisher contends that its proposal was accepted by Galway because Galway did not substitute Kiski until after the thirty-day time period within which Galway had to substitute any subcontractors pursuant to the contract between the Authority and Galway. (*See* Contract, 10/00, ¶ D.5, at D–3; R.R. at 19a.) Fisher claims that it is entitled to challenge the

untimely substitution because it is a third-party beneficiary of the contract between the Authority and Galway. We disagree.

Our Supreme Court in *Scarpitti v. Weborg*, 530 Pa. 366, 609 A.2d 147 (1992), examined whether subdivision lot owners were intended third-party beneficiaries of the contract between the architect and the developer. The Court stated:

> [A] party becomes a third party beneficiary [to a contract] only where both parties to the contract express an intention to benefit the third party in the contract itself, unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id.* at 372–73, 609 A.2d at 150–51 (emphasis and citations omitted). The Court determined that the lot owners, who were required to have their house construction plans reviewed and approved by the architect retained by the developer, were intended beneficiaries of the contract between the architect and the developer and had a cause of action against the architect for any breach of contract for the architect's alleged failure to properly review and approve plans of other lot purchasers in the subdivision.

Here, the contract, which set forth the general conditions, supplemental general conditions, technical specifications, bonds and standard drawings for the Authority's sewage treatment plant improvements project, was made for the benefit of the Authority and Galway. There was no express intent to benefit Fisher. Fisher was not a party to this contract, nor was he

mentioned in the contract.[4] Moreover, the Authority and Galway, as parties to the contract, were free to waive or change any of its provisions by mutual agreement. The Authority and Galway agreed to the substitution of Kiski for Fisher, albeit after the thirty-day time period had lapsed. Because Fisher was neither a party to the contract nor a third-party beneficiary, it cannot enforce any of the terms of the contract, including the thirty-day substitution provision.

Accordingly, we affirm.

### ORDER

AND NOW, this *21st* day of *May*, 2012, the June 17, 2011, order of the Court of Common Pleas of Washington County in the above-captioned matter is affirmed.

---

**4.** Fisher was only mentioned in Galway's bid proposal to the Authority, which was not part of the contract.