J-A32041-15

2016 PA Super 71

| | |
|---|---|
| MAX G. LOUGHMAN AND KELLY L. LOUGHMAN, HUSBAND AND WIFE AND VAN J. LOUGHMAN AND EILEEN LOUGHMAN, HUSBAND AND WIFE, AND JOHN J. LOUGHMAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| EQUITABLE GAS COMPANY, LLC; EQUITRANS, L.P.: MCNAY RENTALS LIMITED PARTNERSHIP; MORRIS TOWNSHIP; EQT PRODUCTION COMPANY | |
| Appellees | No. 155 WDA 2015 |

Appeal from the Order Entered December 29, 2014
In the Court of Common Pleas of Greene County
Civil Division at No: AD 462-2012

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

OPINION BY STABILE, J.:                        **FILED MARCH 22, 2016**

Max G. Loughman and Kelly L. Loughman, husband and wife, Van J. Loughman and Eileen Loughman, husband and wife, and John J. Loughman (collectively "Appellants") appeal from the December 29, 2014 order entered in the Court of Common Pleas of Greene County, denying their motion for summary judgment in the declaratory judgment action they filed against Equitable Gas Company, LLC ("Equitable"), Equitrans, L.P. ("Equitrans"),

McNay Rentals Limited Partnership, Morris Township and EQT Production Company ("EQT") (collectively "Appellees").[1]  Following review, we affirm.

The trial court provided the following factual and procedural background:

> On August 11, 1966, Dorothy Loughman entered into a lease with [Equitable] of the oil and gas under her tract of approximately 250 acres in Morris Township, Greene County.  By the terms of the lease Equitable acquired the right to produce oil and gas and "to inject gas for storage or repressuring in the substrata and to remove same therefrom by pumping or otherwise."  The lease provided for a flat rent for each producing well, delay rent of $250.00 [] per year, and storage rent of $500.00 per year, or $2.00 per acre per year.
>
> [Appellants] are the successors of Dorothy H. Loughman.  On April 18, 2012, they filed an action asking that the court declare that the lease had terminated because of the failure of [Equitable] or its assigns to produce any oil or gas since the lease was signed.  The [second amended] complaint also ask[ed] that [the trial court] find that the lease [was] severed by the assignment of the [production] rights to an affiliated entity, and that therefore whether or not the right to store gas has been preserved, the right to produce gas has been terminated.

Trial Court Opinion ("T.C.O."), 12/12/14, at 1-2.[2]

On June 11, 2013, Appellants filed a motion for summary judgment asking the trial court to declare that all production-related rights under the

_____

[1] In their brief, Appellants note that "McNay and Morris Township were included as nominal defendants because Equitable claimed that they were necessary parties to the action.  The Second Amended Complaint did not assert any claims against these nominal defendants."  Appellants' Brief at 4.

[2] Equitable assigned the lease to Equitrans on April 1, 1988.  On February 24, 2011, Equitrans sublet the production rights to EQT.

- 2 -

lease were terminated. Appellants contended that a 2011 sublease treated production rights and storage rights as severable; that production and storage rights were severable under the terms of the lease; and that production rights were terminated because no oil or gas well was ever drilled on the property. Appellants' Motion for Summary Judgment, 6/11/13, at 6-9. Appellees countered that the sublease did not sever production and storage rights; that the 1966 lease clearly reflects that the parties did not intend to make the lease severable; and that the production rights are not severable from the storage rights under the terms of the 1966 lease. Appellees' Response to Motion for Summary Judgment, 7/15/13, at 10-16.

By order entered December 29, 2014, the trial court denied Appellants' motion and issued an accompanying Memorandum. The trial court concluded—as it had done in a similar case involving a "virtually identical" lease[3]—that "the lease was not severable and had been held by the Lessee, or its assigns, by paying the storage rents provided for in the lease." T.C.O., 12/29/14, at 2-3. While acknowledging there was no comparable sublease in the **Warren** case, the trial court determined the sublease did not alter the outcome because it was simply a sublease and the 2011 sublease was of little use in determining the intent of the parties to the 1966 lease ("Loughman Lease"). **Id.** at 3.

_____

[3] **Warren v. Equitable Gas Co.**, A.D. No. 262 of 1991 (C.C.P. Greene Co., April 22, 2014), *aff'd,* 120 A.3d 369 (Pa. Super. 2015) (Table).

J-A32041-15

Appellants filed this timely appeal. The trial court did not order Appellants to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b) and no concise statement was filed.[4]

In this appeal, Appellants present one issue for this Court's consideration:

> Do the production rights of an oil and gas lease terminate when no oil or gas has been produced in the almost half century since the lease was executed, the lessee has treated the production rights as severable from the storage rights by carving out and transferring those production rights (and the related payment obligations) to a third party and the production and storage rights under the lease are severable by their terms?

_____

[4] On February 24, 2015, this Court entered a *per curiam* rule to show cause why this appeal should not be dismissed as interlocutory or, alternatively, be transferred to Commonwealth Court in light of Morris Township's role as a party to the action. By letter dated March 10, 2015, counsel for Appellants responded that the trial court's denial of summary judgment could have the effect of declaring the rights of the parties and, as such, is immediately appealable (citing **Nat'l Cas. Co. v. Kinney**, 90 A.3d 747 (Pa. Super. 2014) and 42 Pa.C.S.A. § 7532). Counsel further replied that the appeal was within the jurisdiction of this Court as a contract case (citing **Ribarchak v. Municipal Auth. of Monongahela**, 44 A.3d 706, 707 n.1 (Pa. Cmwlth. 2012)).

On March 20, this Court entered a *per curiam* order discharging the rule based on the response to the February 24 order but noting the ruling "is not binding upon this Court as a final determination of the propriety of the appeal. Counsel are advised that the issue may be visited by the panel [] assigned to the case, and counsel should be prepared to address, in their briefs or at the time of oral argument, any concerns the panel may have concerning this issue." *Per Curiam* Order, 3/20/15, at 1.

We find Appellants' reliance on **Kinney** and **Ribarchak** appropriate. Having determined the appeal is properly before us, we shall proceed to consider the merits of Appellants' appeal.

- 4 -

Appellants' Brief at 3.

When reviewing the trial court's disposition of a summary judgment motion, this Court employs the following standard:

> We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Szymanowski v. Brace*, 987 A.2d 717, 721-22 (Pa. Super. 2009) (citations omitted).

The Loughman Lease included the following terms:

> The lessee shall have during the term of this lease the exclusive right to drill upon said land for natural gas and petroleum oil, including the right to close out, drill deeper and operate any abandoned or plugged well or wells located on said land for the production of gas and/or oil, or to use said well or wells for the storage of gas, subject to all of the terms and conditions of this lease, as though said well or wells had been drilled as a new well after the execution of this lease, to inject gas for storage or repressuring in the substrata and to remove same therefrom by pumping or otherwise; the right to construct and maintain pipe lines, gates, drips and other accessories for or in connection with the transportation of gas and oil produced from said land or for the storage of gas therein; the right to use sufficient water and gas from said land for drilling and operating thereon; . . .
>
> To have and to hold the said land and privileges for the said purposes for and during a period of Ten (10) Years from October 7, 1966, **and as long after commencement of operations as said land is operated for the exploration or production of gas or oil, *or* as gas or oil is found in paying**

**quantities thereon,** *or* **stored thereunder** *or* **as long as said land is used for the storage of gas** *or* **the protection of gas storage on lands in the general vicinity of said land. The Lessee shall be the sole judge of when and if said land is being used for the storage of gas or the protection of gas storage on lands in the general vicinity of said land.**

. . .

[U]nless a well is previously completed upon said land, the Lessee shall[,] beginning on the 7th day of October, 1966, and continuing until a well is completed or this Lease is surrendered or this lease is used for the storage of gas or the protection of gas storage on lands in the general vicinity of said land, pay to the Lessor, quarterly in advance the sum of Sixty two and 50/110 ($62.50) as a carrying rent in lieu of development, on the entire acreage for the three (3) months following the date of said payment, said sum being at the rate of One dollar per acre per annum.

When said land is used for the storage of gas (but there is no well on said land), or for the protection of gas storage on lands in the general vicinity the Lessee covenants and agrees to pay to the Lessor quarterly in advance an annual storage rent of Five Hundred and No/100 ($500.00) Dollars at the rate of Two Dollars per acre per annum until a well is completed or this lease is surrendered.

Loughman Lease, 8/11/66, at 2 (unnumbered) (emphasis added).

By Conveyance, Assignment and Transfer dated April 1, 1988 ("1988 Assignment"), Equitable conveyed to Equitrans various oil and gas leases and associated rights, including the Loughman Lease. By Sublease Agreement effective February 24, 2011, Equitrans sublet to EQT the production rights to the oil and gas in the lands covered by the Loughman Lease. The terms of the Sublease Agreement included an assignability clause, which provided in relevant part that "[t]he parties shall have the right to assign, encumber, transfer, or sublet their rights granted hereunder"

- 6 -

but that any such assignment "shall be subordinate to this Agreement." Further, "[t]he parties expressly agree that it is not their intent to sever the production and storage rights under the Leases through any assignment of this Agreement." Sublease Agreement, 2/24/11, at 3. The agreement also established the duration of the agreement, directing that:

> This Agreement shall remain in effect as to each Lease for the term of each such Lease, provided however, that the Sublessee may in its discretion surrender its rights hereunder in an individual Lease; upon such a surrender, the non-severed production rights associated with the specific Lease shall automatically revert back to Sublessor . . . .

*Id.* at 5.

Against that backdrop, recognizing the parties do not contend there are any unresolved issues of material fact, we must determine whether the trial court committed error of law or abused its discretion by denying summary judgment based on its conclusion that production and storage rights included in the Loughman lease were not severed by assignment of production rights under the 2011 Sublease Agreement.

When faced with a contract dispute, we are guided by the following principles:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court

must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Szymanowski*, 987 A.2d at 722 (quotations and internal citations omitted).

As Appellees correctly observe, oil and gas leases are subject to the same contract law principles that apply to contract interpretation generally. Appellees' Brief at 10 (citing *J.K. Willison v. Consolidation Coal Co.*, 637 A.2d 979 (Pa. 1994)). "When a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Id.* at 11 (quoting *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (additional citations omitted)). "[W]e must be mindful that the object in interpreting instruments relating to oil and gas interests, like any written instrument, is to ascertain and effectuate the intention of the parties." *Szymanowski*, 987 A.2d at 720 (quotations and citations omitted).

In *Jacobs v. CNG Transmission Corp.*, 772 A.2d 445 (Pa. 2001), our Supreme Court examined the severability of production and storage rights.[5]  The Court concluded that the intent of the parties should be

---

[5] *Jacobs* involved two questions certified to our Supreme Court by the Third Circuit Court of Appeals.  The Supreme Court "directed the parties to brief two questions: (1) whether a finding that the contract between the parties is ambiguous is a prerequisite to applying the doctrine of severability set forth in *Heilwood Fuel Co. v. Manor Real Estate Co.*, 405 Pa. 319, 175 A.2d 880 (1961); and (2) whether Pennsylvania jurisprudence recognizes an implied covenant to develop and produce oil or natural gas that imposes upon the lessee the obligation to attempt to produce oil and gas from the leased property." *Id.* at 446.

examined if the language of the contract does not clearly address the issue of severability. *Id.* at 450. The Court held:

> [A]bsent express language that a contract is entire, a court may look to the contract as a whole, including the character of the consideration, to determine the intent of the parties as to severability and may also consider the circumstances surrounding the execution of the contract, the conduct of the parties, and any other factor pertinent to ascertaining the parties' intent. The court need not make a specific predicate finding of ambiguity before undertaking the inquiry—indeed, if the contract were crystal clear as to the parties' intent, severability likely would not be a contested issue.

*Id.* at 452.

Unquestionably, the Loughman Lease does not include express language that the contract is entire. However, looking at the contract as a whole, it is clear that the lease does include disjunctive language addressing the duration of the contract, specifying it will remain in effect as long as the "land is operated for the exploration or production of gas or oil, **or** as gas or oil is found in paying quantities thereon, **or** stored thereunder **or** as long as said land is used for the storage of gas **or** the protection of gas storage on lands in the general vicinity of said land." Loughman Lease, 8/11/66, at 2 (unnumbered) (emphasis added). Further, "[t]he **Lessee** shall be the sole judge of when and if said land is being used for the storage of gas or the protection of gas storage on lands in the general vicinity of said land." *Id.* (emphasis added).

Appellants argue that "the use of the term 'or' . . . confirms that the production rights and storage rights . . . are separate and divisible rights

that can be, as the parties have treated them here, severable." Appellants'
Reply Brief at 7. They contend that by subletting production rights to EQT in
2011, Equitrans demonstrated its intent to sever production and storage
rights and, in fact, did sever them. Appellants' Brief at 16. While
recognizing its lack of binding authority, Appellants suggest that *K & D
Holdings, LLC v. Equitrans, L.P.*, Civil Action No. 5:13-cv-152 (N.D.W.Va.
September 30, 2014), is instructive. In that case, a West Virginia district
court considered the severability of production and storage rights under a
lease similar to the Loughman Lease. The district court concluded the lease
was severable. However, the Fourth Circuit Court of Appeals has since
overturned that ruling based on the language of the leases, holding:

> In this case, a fair construction of the terms of the Lease
> compels the conclusion that the Lease was intended to be entire,
> not divisible. To hold otherwise would be to ignore the
> disjunctive use of the word "or" in the Durational Provision. The
> Lease expressly sets out a list of activities and makes plain that
> engaging in any one of them constitutes an exercise of rights
> such that the entirety of the Lease would remain in effect. As
> the West Virginia Supreme Court of Appeals has held, the word
> "or" . . . in the absence of a contrary intent of the parties
> appearing from other parts of the lease, [shall] be given its
> ordinary meaning and not considered as meaning "and."

*K & D Holdings, LLC v. Equitrans, L. P.*, 2015 WL 9461340, at *4 (4th
Cir. December 28, 2015) (citation and internal quotations omitted).

We recognize that the trial court's Memorandum did not provide an in-
depth analysis of the Loughman Lease. The trial court simply adopted its
findings from another case involving a "virtually identical" lease and

concluded the Loughman Lease remained in effect. However, as noted above, we are cognizant that the interpretation of any contract is a question of law for which our review is plenary. *Szymanowski*, 987 A.2d at 722. Therefore, we need not defer to the conclusions of the trial court and are free to draw our own inferences. *Id.*

Based on our review of the record, including the Loughman Lease, the 1988 Assignment, and the Sublease Agreement, we find that the durational provisions of the Loughman Lease are clearly and unambiguously written in the disjunctive and provide that the Loughman Lease shall continue during either production **or** storage. Further, the 2011 Sublease Agreement specifically expresses Equitrans' intent, as assignee of the Loughman Lease, not to sever production and storage rights. Sublease Agreement, 2/24/11, at 3. Moreover, in the event EQT as sublessee elected to surrender its rights in an individual lease, the non-severed production rights associated with the Loughman Lease would automatically revert to Equitrans. *Id.* at 5. Recognizing that our goal is to ascertain and effectuate the intention of the parties, *see Szymanowski, supra*, our examination of the contracts leads us to conclude the parties intended the Loughman Lease to be nonseverable.

We discern no error of law or abuse of discretion on the part of the trial court for concluding the Loughman Lease is not severable and, in turn, denying Appellants' motion for summary judgment. Therefore, we affirm the trial court's order.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2016