# The City of Allegheny *versus* William Campbell and Son.

License to use a certain wharf belonging to a city was granted to A. upon the payment of a stipulated monthly sum for wharfage. The city subsequently passed an ordinance authorizing a railroad company to build tracks along the wharf, and later, to widen said tracks. While thus engaged, the railroad company removed certain posts from the wharf, theretofore used for the mooring of vessels, and left a pile of stones and debris deposited thereon. A. notified the city to replace the posts and remove the debris, which it neglected to do, and upon a sudden rise in the river certain rafts belonging to A. and attached to the wharf broke away and were lost. A. brought suit against the city for the damages thus occasioned, and asked the court to charge: That if the jury believed the wharf was under the exclusive control of the city, that the city derived a revenue from it; that A. had paid wharfage for its use to the city, and that the city was guilty of negligence in allowing stones and rubbish to remain on the wharf after notice, in consequence of which neglect A. suffered loss, then A. was entitled to recover therefor from the city. The court having affirmed A.'s points the jury found for the plaintiff. *Held*,

(1.) That there was no error in affirming said points.

(2.) That as between A. and the city, the latter was responsible for its negligence. Whatever A.'s remedy against the railroad company might be, it did not affect the city's liability to him.

(3.) That A. was entitled to interest on his claim as part of his damages.

(4.) That A. was not guilty of such contributory negligence as to prevent his recovery. Although he may have had equal opportunity of knowing the danger, he was not bound to the same degree of diligence as the city.

(5.) That A.'s occupancy of the wharf under license from the city, did not relieve the latter from its duty to keep the wharf in repair. There was no analogy between this relation, and the ordinary one of landlord and tenant.

[City of Allegheny v. Campbell.]

November 4th, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ.  STERRETT and GREEN, JJ., absent.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term, 1884, No. 142.

Case, by William Campbell and George A. Campbell, trading as William Campbell & Son, against the city of Allegheny to recover damages for the loss of several flats and a float, carried away by high water, from a wharf, used by the plaintiffs under a license from the city, owing, as alleged, to the negligence of the defendants in permitting certain posts to be taken out of the wharf, and débris to be piled thereon, and in neglecting to remedy the defects in the wharf claimed to be caused thereby.

On the trial, before COLLIER, J., the following facts appeared: The wharf in question was under the exclusive control of the city authorities who granted the plaintiffs a license to use the same upon payment of a stipulated rental as wharfage.   After the granting of this license, the city passed an ordinance giving the Pittsburgh & Western Railroad Company the privilege of laying tracks along the wharf; and subsequently granted said company the right to widen its tracks.   While thus engaged the railroad company took out of the wharf certain posts theretofore used for the mooring of rafts and vessels. They also deposited a quantity of stones and débris on or near the wharf.   The plaintiffs notified the city authorities to replace the posts and remove the stones, but the latter neglected to do so.

In February, 1883, the river rose six or eight feet, and several flats and a float belonging to plaintiffs broke from their moorings at the wharf and were carried away, owing, as alleged by the plaintiffs, to the failure of the city to comply with their notice.

Plaintiffs' counsel proposed to ask one Peter Maul, a witness who was shown to be an experienced riverman: "what effect that pile of stone had on the safety of craft landing and moored at the wharf, if any, at the time it was there?"  Objected to as incompetent and irrelevant.   Objection overruled and answer admitted as follows:  *Ans.*  "It will keep them sticking out into the river a little piece further; they could not have got in as close to the shore as they might have got." (Tenth assignment of error.)

Plaintiffs asked the court to charge:

2. "The defendant city being in possession of a public wharf, within its corporate limits, exercising exclusive supervision and control over it, and receiving wharfage for its use, is bound to keep it in proper condition for use, and if the jury

believe from the evidence, that the loss to plaintiffs was occasioned in. consequence of said defendant city's neglect to keep the said wharf in good order, their verdict should be for plaintiffs in such amount as the evidence justifies." Affirmed. (First assignment of error.)

3. " The defendant city of Allegheny being in possession of the wharf at which plaintiffs' boats, etc., were lost, and receiving tolls or wharfage for its use, was held to the utmost care of said wharf, and it was a violation of defendant's duty to the public, to permit said wharf to get out of repair, or neglect to provide proper means of fastenings for the mooring of boats and other craft at said wharf, and if the jury believe, from the evidence, that plaintiffs' loss on or about the 4th day of February, 1883, was occasioned in consequence of such neglect of duty on the part of defendant city, their verdict should be for the plaintiffs." Affirmed. (Second assignment of error.)

4. " If the jury believe, from the evidence, that the wharf from which plaintiffs' property was lost, was under the exclusive control and regulation of the defendant city authorities; that said defendant city derived a revenue from its use; that plaintiffs had paid wharfage for its use to said defendant city; that the defendant city authorities were guilty of negligence in allowing dirt, rubbish, stone, débris to remain on said wharf, after notice, and if in consequence of such neglect the plaintiffs suffered loss, the defendant city is liable in damages to the plaintiffs for the injury thereby sustained." Affirmed. (Third assignment of error.)

5. " If the jury believe, from the evidence, that at the time plaintiffs' loss occurred, the defendant city of Allegheny was the proprietor of a public wharf within its corporate limits, on the shore of the Allegheny river, and keeping the same for hire, and charging and receiving wharfage from plaintiffs for the landing and anchorage of their boats at said wharf, and that plaintiffs' boats, etc., at said wharf were lost or destroyed in consequence of the neglect of said defendant city to provide and maintain proper check posts or ring bolts for securing and fastening said boats of plaintiffs when lying at said wharf, after notice, then said defendant city of Allegheny is liable in damages for the loss of the plaintiffs, and their verdict should be for plaintiffs in such amount as they actually lost." Affirmed. (Fourth assignment of error.)

7. " If the jury find for the plaintiffs they should add interest to the amount so found, from the date the loss occurred, to wit: February 4th, A. D. 1883." Affirmed. (Fifth assignment of error.)

[City of Allegheny v. Campbell.]

The defendants asked the court to charge, inter alia, as follows:

1. "Upon the pleadings and evidence there can be no recovery." Refused. (Sixth assignment of error.)

3. "The plaintiffs have a statutory remedy against the railroad company for the recovery of all damages caused by the construction and operation of the railroad upon the wharf, and cannot recover in this action." Refused. (Seventh assignment of error.)

5. "If the plaintiffs knew that the wharf was in a dangerous condition, and that the tying appliances were insufficient to protect their property from floods and freshets in the river, they were bound to avoid the perilous and dangerous position in which they were placed; and having failed to do so, were guilty of contributory negligence, and cannot recover." Refused. (Eighth assignment of error.)

11. "The plaintiff, Wm. Campbell, having testified that he had exclusive possession of a portion of the landing, by the year, at an annual rent, the city would not be liable to him for damages resulting from lack of posts, or the wharf being out of repair." Refused. (Ninth assignment of error.)

Verdict for plaintiffs for $6,390, and judgment thereon; whereupon the defendant took this writ, assigning for error the admission of evidence, and the answers to points as above set out.

*W. B. Rodgers*, City Solicitor, for plaintiff in error.—The case of Pittsburgh *v*. Grier, 10 Harris 54, upon which this case was ruled in the court below is not applicable, because there, the wharf was open to the public, and the owners of the vessel lost had no special contract with the city; while in this case we claim that the defendants below were the exclusive tenants of the city, and that the question should be determined by principles applicable to landlord and tenant. The court erred in assuming, by its answers to the points submitted by plaintiffs below, that the wharf was in the exclusive possession of the city. By refusing the fifth and eleventh points of the defendants below the court denied the undoubted rule as to contributory negligence: Payne *v̇*. Reese, 4 Out. 301, and went beyond the principle of Pittsburgh *v*. Grier; Clancy *v*. Byrne, 58 Barb. 449. Interest was not properly recoverable under the circumstances: Weir *v*. Allegheny Co., 14 Norris 415; Pittsburgh Southern R. R. Co. *v*. Taylor, 8 Out. 396. The negligence charged in the declaration, was the removal of the posts and the obstruction by the road-bed of the railroad. But on the trial, under objections, plaintiffs were allowed to prove that the landing was unsafe by reason

of a pile of débris, placed by the company between the railroad and the water (10th assignment), and the court affirmed plaintiff's point (3d assignment), as to the negligence of the city in allowing the same.

*George D. Riddle* and *John Barton,* for defendants in error.— This case was properly ruled on the authority of Pittsburgh *v.* Grier, supra, which is the leading authority in many states: Thompson on Negligence, vol. 1, p. 316 ; City of Philadelphia *v.* Gilmartin, 21 P. F. S. 157. The ruling in regard to interest was correct: Pa. R. R. Co. *v.* Patterson, 73 Pa. St. 499.

Mr. Justice PAXSON delivered the opinion of the court, January 5th, 1885.

The first four assignments of error may be considered together. They involve the proposition that if the wharf from which the property of the plaintiffs below was lost was under the exclusive control and regulation of the defendant city authorities ; that said defendant city derived a revenue from its use ; that plaintiffs had paid wharfage for its use to said defendant city ; that the defendant city authorities were guilty of negligence in allowing dirt, rubbish, stone and débris to remain on said wharf, after notice, and if in consequence of such neglect the plaintiffs suffered loss, the defendant city is liable to the plaintiffs for the injury thereby sustained.

The mode of stating the above varies somewhat in each of the four assignments, which contain the plaintiffs' second, third, fourth and fifth points respectively, but the difference is not so essential as to make a separate discussion of them necessary. The court below affirmed each of the points.

It was not controverted at the trial below that the plaintiffs occupied a portion of the wharf belonging to the city of Allegheny, nor that they paid rent or wharfage therefor, nor that at the time of the accident they had a certain amount of property at their wharf, and that a rise in the river brought down a large amount of ice, and carried away and destroyed a large amount of plaintiffs' property.

The jury have found that the wharf at which plaintiffs' property was lost was under the exclusive control and regulation of the defendant city authorities. The receipts for wharfage show that the plaintiffs had a mere license to use the wharf at a stipulated price, and there was nothing in the case to show that the city did not exercise authority and control over it. It also appears that after the city had granted to the plaintiffs the right to use the wharf, it passed an ordinance giving the Pittsburg and Western Railroad Company

the right to lay its tracks upon the wharf, and subsequently gave the same company the right to widen its tracks there; that in so widening its tracks the railroad company took out certain posts which had been theretofore used to moor rafts or vessels; that in addition the railroad company deposited a quantity of stones and débris on the portion of the wharf used by the plaintiffs; that the city had been notified to replace the posts and remove the pile of stones, but had neglected to do so; and it was alleged that this neglect, the omission to replace the posts and to remove the stones, was the occasion of the injury to the property of the plaintiffs.

It was not denied that the city had authority to grant the railroad company the right to widen their tracks at this point. It must also be conceded that if the railroad company left the wharf in a dangerous condition, as between the plaintiffs and the city, the latter would be responsible for the consequences of such condition. We have nothing to do with any question that might arise between the railroad company and the city, but the plaintiffs certainly have a right to look to the city for redress, for it was upon the city the duty was devolved of keeping the wharf in a safe condition. It was decided in the City of Pittsburgh v. Grier, 10 Harris 54, that "A city being in possession of a public wharf, within its limits, exercising exclusive supervision and control over it, and receiving tolls for its use, is bound to keep it in proper condition for use." Under this authority, we think the ruling of the court below was fully justified.

The fifth assignment alleges that the court below erred in instructing the jury that if they found for the plaintiff they should allow interest. We see no error in this. Weir v. County of Allegheny, 14 Norris 415, is not in point. That was a suit against the county to recover damages for the destruction of the plaintiff's property by rioters, and it was held that as the suit was brought under a special statute which gave no interest, none could be recovered. It is laid down by Mr. Sedgwick, in his Measure of Damages, vol. 2, p. 158, that interest may be recovered "where it can be claimed as a right, either because there is an express contract to pay it, or because it is recoverable as damages which the party is legally bound to pay, or for money or property improperly withheld." In the case in hand interest was clearly recoverable as a part of the damages. Without the addition of interest on the value of the property from the time it was destroyed, the remedy of the plaintiffs would be inadequate. In the case of Pennsylvania Railroad Company v. Patterson, 23 P. F. S. 491, there was a recovery of interest under analogous circumstances, and although error was not assigned to such recovery,

[City of Allegheny *v.* Campbell.]

the omission is significant as to the state of the law upon this point.   We are of opinion that interest was properly allowed.

The sixth assignment does not require discussion.  It would have been bald error for the court to have affirmed the defendant's first point, the effect of which would have been to withdraw the case from the jury.

Nor is there any merit in the seventh assignment.   No matter what remedy the plaintiffs might have against the railroad company, it could not affect their remedy against the city which owes them a direct duty.

It was not error to refuse the defendant's fifth point in the phraseology in which it was put.   The doctrine there stated does not apply to this case, for the reason as was stated in the City of Pittsburgh *v.* Grier, supra, at page 68: "But the rule is inapplicable to this case, for even if we assume that both parties had equal opportunity of seeing and understanding the danger, they were not bound to equal degrees of vigilance.   The city was held to the utmost care of the wharf; the owners of the boat only to that common prudence which would keep them clear of a manifest peril."

There was no error in refusing the defendant's eleventh point, for the reasons already in part stated.   There was nothing in the possession or occupancy of the wharf by the plaintiffs that would relieve the city from its duty to keep the wharf in repair.   There is no analogy between this case and the ordinary one of landlord and tenant.   The city, by granting wharf licenses or privileges at a stipulated rent, does not relinquish its general supervision and control of the property, nor relieve itself from responsibility.   The fact that it granted the rights before mentioned without question to the railroad company, showed that it exercised dominion and control over the wharf.   Aside from this, the grant of such license was a direct authority from the city to the railroad company to do the acts complained of, and which resulted in the destruction of the plaintiffs' property.

No objection is apparent to the question contained in the tenth and last assignment.   The pile of stone referred to was one of the obstructions which it is alleged caused the accident.   An inquiry into its position and effect was certainly pertinent, and no error is seen in the admission of the evidence.

We find no error in this record.

Judgment affirmed.