364 A.2d 398

**Maurice BENNETCH, Appellant,**

**v.**

**Frank E. DREISTADT et al., Individuals.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

530

Egli, Reilly, Wolfson & Feeman, James T. Reilly, Lebanon, for appellant.

Henry & Mesics, Joseph C. Mesics, Steiner & Eby, Robert J. Eby, Lebanon, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

The present appeal comes before our court following the grant of a summary judgment by the chancellor be-

low. We cannot sustain the chancellor's holding that a summary judgment was proper, and will, therefore, reverse the judgment and remand for further proceedings.

The facts indicate that on April 1, 1972, appellant and appellee Frank Dreistadt entered into a one-year renewable lease for certain land. The lease instrument described the land as "[a]ll that certain pasture land and cultivated land, consisting of approximately 135 acres, more or less, together with two (2) barns thereon." The land covered by the lease was part of a tract consisting of approximately 260 acres.

The lease provided that if the appellant occupied the premises after the term of the lease, "this Lease and all of its terms, provisions, conditions, covenants, confessions or confessions of judgment, waivers, remedies and all of Lessor's rights herein specially given and agreed to, shall be in force for another month and so on from month to month as long as the relation of Landlord and Tenant continues." This printed form lease instrument also contained a typewritten clause giving appellant the option of first refusal on any price offered for the purchase of the property.

In April of 1973, prior to the expiration of the one year term of the lease, appellant sent to appellee Frank Dreistadt a check for the entire amount of the rent for another year. Appellee Dreistadt accepted this check, and appellant continued to occupy the property. On February 5, 1974, appellee Dreistadt and his wife appellee Clara Dreistadt signed an agreement to sell the entire 260 acre tract of land to appellee Galen H. Wolgemuth and appellee Henry J. Steiner.

Appellant learned of the impending sale and notified the appellees, by certified letters dated March 6, 1974, that he intended to exercise the right of first refusal provided for in the original lease. Appellant again notified appellees, on March 25, 1974, of his intention to purchase that part of the entire tract covered by the lease. Not-

withstanding these notices, appellees Frank and Clara Dreistadt conveyed the property to appellees Steiner and Wolgemuth on April 5, 1974.

Appellant commenced an equity action by writ of summons on May 31, 1974, followed by a complaint for specific performance on February 5, 1975. On March 6, 1975, several depositions were taken. Appellees filed an answer containing new matter and a counterclaim on July 9, 1975, and appellant filed an amended complaint and a reply to new matter on July 22, 1975. A motion for summary judgment was filed on July 30, 1975, and the matter was argued on September 17, 1975. The chancellor granted the motion for summary judgment and dismissed appellant's complaint on September 24, 1975.

As the chancellor correctly noted, a summary judgment is to be entered only in the clearest of cases where there is not the slightest doubt as to the absence of a triable issue of material fact. *Granthum v. Textile Machine Works*, 230 Pa.Super. 199, 326 A.2d 449 (1974). "To determine the absence of genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment." *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975).

The chancellor based his grant of summary judgment on his conclusion that the description of the land covered by the lease was too vague and uncertain to support the action for specific performance. We, however, cannot agree with this conclusion, considered in the framework of the present posture of this case.

Although there is disagreement as to the land covered by the lease, the deposition of Gary Matthew, a registered surveyor, indicates that he could determine that portion of the entire 260 acres described in the lease. Therefore, an issue of fact was raised as to whether the land described in the lease agreement could be accurately defined.

The fact that deposition of Joel Moehlmann, a registered professional engineer, indicates that the acreage actually complying with the lease description totals 170.932 acres, as compared with the 135 acres "more or less" provided for in the agreement, does not eliminate all triable issues of fact but would instead be used to aid in a determination on the merits.

Appellees also argued in their motion before the lower court and in this appeal that summary judgment should be granted on the alternative ground that the option to purchase contained in the first lease lapsed before appellant attempted to exercise it. Under the situation here presented, appellees contend that appellant had no right to challenge the sale of the property. Appellant, on the other hand, argues that the extension of the lease operated to extend the right of first refusal as well.

The leading case in Pennsylvania which clearly sets the test for the answer to the question of whether an extension of a lease operates to extend a purchase option granted to the lessee in the original lease is *Pettit v. Tourison*, 283 Pa. 529, 129 A. 587 (1925). The relevant sections of the lease in that case provide as follows: "The lessor grants unto the lessee the privilege of renewing this lease for a term of five years after the expiration of the seven-year term ending June 1, 1923, under the same terms and conditions as herein covenanted" and "[t]he lessor grants unto the lessee the right to purchase the property herein described at any time during the term of *this lease* for the sum of $35,000 cash." 283 Pa. at 530, 129 A. at 587. (emphasis added)

The court in *Pettit v. Tourison,* supra, stated:

"The privilege of renewing the lease for a further term, and the option given to purchase the property, confer separate and distinct rights and powers upon the lessee. The first has reference to a continuance of the tenancy; the latter confers upon the lessee the pow-

er to terminate the tenancy and to become the absolute owner of the property. The option to purchase is not an essential covenant of the lease, nor is it a term and condition of the demise. There are many covenants which are often found in leases which are independent and not essential parts of the demise, which, without express agreement to that effect, are not to be incorporated in renewals thereof . . ..

"The option to purchase is an independent clause in the lease, giving the lessee the right to purchase the property within the time specified. *Signor v. Keystone Consistory*, 277 Pa. 504, 121 A. 320. It may be treated as a part of the agreement, in so far as it describes the persons and the property, but it forms no part of the demise and was not necessary for the continuance of the tenancy. Under the language of the present lease the provision for renewal has reference to the continuance of the tenancy for a further period of five years, and the renewal operates only to continue the agreement as a lease. *Parker v. Lewis*, 267 Pa. 382, 110 A. 79. Had the parties intended that the option to purchase was to be extended beyond the original term, it would have been easy to have employed apt language to express such an agreement by providing for the exercise of the option not only 'during the term of *this* lease,' but during the renewal term. The lessee has not elected to exercise the right to purchase the demised premises; he has elected to continue the tenancy by the exercise of the renewal privilege, and insists that the provision for the renewal of the tenancy carried with it an extension of the right to purchase for a further term of 5 years. To sustain plaintiff's contention, the option to purchase would have to be treated as one of the terms of the lease relating to the continuance of the tenancy for which the privilege of renewal is given, or the provision conferring the right to purchase would have to be enlarged by reading into it a right to exer-

cise the option during the renewal term. This cannot be done." 283 Pa. at 531–32, 129 A. at 587–88.

We must carefully examine the language contained in the lease now before us, and make an interpretation based on an application of the doctrines of *Pettit, supra.* The words "this [L]ease" in the renewal clause must be considered as words of art identifying the actual demise. Included in and covered by these words will be all provisions of the instrument which are part of the demise and necessary for the continuance of the tenancy. However, the words "and all its" must be considered as something more than a further unnecessary description of the demise. We conclude that these words refer to the entire instrument and include *all* "terms, provisions, conditions, covenants, confessions or confessions of judgment, waivers, [and] remedies" contained in the four corners of the instrument itself. This language, which goes beyond that necessary for the simple extension of the lease itself, must be interpreted as evidencing an express desire to incorporate an extention of the right of first refusal with any extension of the lease under the instrument.

The judgment of the chancellor is reversed and the case is remanded for further proceedings.

JACOBS, J., dissents.