424 A.2d 902

**Furman WADE, Jr. and Audra Wade, his wife**

v.

**S. J. GROVES & SONS COMPANY, a corporation and Jane Williams.**

**Appeal of S. J. GROVES & SONS COMPANY.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Jan. 9, 1981.

466

Charles C. Keller, Washington, for appellants.

Alan Berman, Pittsburgh, for appellees.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

CERCONE, President Judge:

This is an appeal from the September 15, 1978 order of the Court of Common Pleas of Greene County which adjudged the defendants jointly and severally liable for damages caused to plaintiffs' property as a result of their negligence. The lower court found partly reparable and partly permanent injury thereby awarding damages for the cost of repairs and for the depreciation in market value, respectively. This, in conjunction with interest awarded in the form of "delay compensation," made up the total damages of which, through the invocation of his equity powers, the trial judge, acting as chancellor in equity, apportioned ninety percent against contractor-defendant, S. J. Groves & Sons Company, and ten percent against landowner-defendant, Jane Williams. We reverse in part, affirm in part, and vacate and remand the remainder of the case to the lower court for the reasons set forth below.

The defendant, Groves Company, was the contractor responsible for the construction of a portion of Interstate Highway 79 near the Borough of Waynesburg, Franklin

Township in Greene County. In connection with its duties under this state road construction contract, Groves Company entered into a "Waste Agreement" with Jack E. Williams and Jane Williams which provided for dumping a large quantity of dirt, rock and other material commonly known as waste or fill on the land of Mr. and Mrs. Williams. The area to be covered by the fill was a natural gully with an existing water course running through it. The contour of this watershed was shaped like a bowl which was wider at the top and narrower at the bottom. The top of the bowl is one hundred (100) feet above plaintiff Wade's property which is situated to the west of the main portion of the bowl and on its lower rim.

Pursuant to the waste agreement, Groves Company covered 206,602 square feet or 4 acres of the Williams' property with 124,000 cubic yards of fill between May 18, 1971 and February 28, 1972. The fill extended to the top rim of the bowl in the section directly east of, and above, the Wades' residence. In filling this 46 foot gully to the east of plaintiffs' property, Groves sloped his fill in such a fashion as to create a more pronounced draw toward the Wades' house. This resulted in serious water drainage problems for the Wades: when it rained, a large amount of water, mud, silt, stone and other debris washed down off of the newly filled section of the bowl and into their backyard. The Wades have installed several underground pipes and catch basins to divert the course of the water away from this property. Mr. Wade and his neighbors have done bulldozer work on the contour of the Williams' property and have continually sought to maintain adequate erosion resistant vegetation on the waste area. The repairs of both the defendant-contractor and the Wades have apparently been successful since the evidence indicates that no further property damage has occurred thereafter.

In June of 1976, the plaintiffs, Furman Wade, Jr. and Audra Wade, his wife, brought an action in equity against Groves Company and Jane Williams for the damage they negligently caused to the Wades' property. Plaintiffs

sought damages for both the cost of the repairs they have made and for the permanent diminution in value of their property. In addition, plaintiffs prayed for injunctive relief seeking to require the defendants to remove or otherwise remedy the condition of the land fill so as to prevent further waste from being washed onto the plaintiffs' land.

Sitting without a jury, the trial court properly refused to grant injunctive relief since there was evidence that the condition had already been substantially remedied. The trial court, however, did find both defendants "jointly and severally" liable and awarded damages of $15,053.99, which included repair costs for the temporary injury, diminution in value for permanent loss of the value of plaintiffs' property, and "delay compensation" measured by the amount of legal interest (6%) for 7 years back to 1971. This total sum of damages was then apportioned by the trial judge ten percent against the landowner-defendant and ninety percent against the contractor-defendant. This appeal follows by defendant, Groves Company alone.

In this appeal, appellant Groves presents four issues for our review: (1) whether the court below was correct in apportioning damages between defendants who are jointly and severally liable; (2) whether the trial court erred in allowing "delay compensation" measured by the legal rate of interest (6%) from the time the unliquidated tort claim arose; (3) whether the trial court correctly included as part of the damage award, a bill which was made out to the plaintiffs' neighbor who was assisting him in making repairs; and (4) whether the lower court properly allowed damages for the change in market value of plaintiffs' property in addition to damages for the cost of repairs.

## I.

Appellant's first argument is that the lower court erred in apportioning damages at ten percent against defendant-appellee[1] Williams and ninety percent against defendant-ap-

---

1. Defendant Williams is the appellee with respect to issue I of this opinion concerning apportionment of damages, while plaintiffs, Mr.

pellant Groves Company after having made a determination that such individuals were jointly and severally liable. The lower court had originally based this allocation of damages on the Pennsylvania Comparative Negligence Statute, Act of July 9, 1976, P.L. 586, No. 142, § 7102, added April 28, 1978, P.L. 202 No. 53, § 10(89), 42 Pa.C.S. § 7102 (Supp. 1980).[2] However, appellant Groves filed an exception on the basis that the statute was not in effect at the time this cause of action arose and, hence, was improper authority on which to base an apportionment of damages. The trial court noted that appellant was correct in stating that the statute was inapplicable to the present case, but, nevertheless, the court let its previous apportionment stand, by invoking the discretion of a chancellor in equity:

It is true that Act had not been enacted when this case arose, as counsel for S. J. Grove correctly points out, and is not retroactive beyond its effective date, September 7, 1976. See *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313. And even now, as we consider the problem before us in equity, recognizing that there is no possibility that, at law, the differentiation could be made, we are satisfied that it is within the sound discretion of the Court as chancellor to do so. The land owner was only a passive agent in the causal connection of the acts and the resulting damages.

and Mrs. Wade, are the appellees with respect to all remaining issues.

2. The lower court found as follows in its 10th, 11th and 12th conclusions of law:

10. Section 7102 of Title 42 (Judicial Code) imposes upon defendants who are jointly and severally liable, liability for the proportion of the total dollar amount awarded as damages in the ratio of the amount of each defendant's causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed.

11. For the defendant Williams, the ratio of the amount of her causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed is 10%, resulting in a money judgment of the total sum of $1505.34.

12. For the defendant Groves, the ratio of the amount of its causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed is 90% resulting in a money judgment of the total sum of $13,448.05.

It was the construction company who leased the land for a modest sum and who spilled the dirt fill in huge quantities down the slope, and who set the stage for the rains, whether in usual amounts or in cloud bursts, that put a substantial amount of silt and debris on plaintiff's property who gave no lease, nor any consent, and who has a right not to have his residential property made an involuntary cachement area for the overflow of dirt from the construction of I 79.

We disagree with the trial court's conclusion.

■ To begin with, it is doubtful whether this case is a proper one for the invocation of equitable principles at all. Along these lines the appellant asserts that, in reality, this was a trespass action at law for damages because the trial court dismissed the prayer for equitable relief in its original decree nisi. The court dismissed the claim for an injunction on the rationale that the condition had already been repaired to the extent possible which, therefore, rendered the injunction unnecessary. It is appellant's position that when the equity claim was dismissed, the action automatically became one at law, thereby rendering equitable principles inapplicable. However, we acknowledge that once equity takes jurisdiction over a controversy, that jurisdiction continues until all issues raised in that controversy have been decided. *McGovern v. Spear*, 463 Pa. 269, 272–73, 344 A.2d 826, 828 (1975); *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 49, 209 A.2d 375, 382 (1964).[3]

**3.** In *McGovern*, the court said this general rule was applicable because the encroachments that were the subject of the equitable claims were continuing encroachments at the time suit was instituted, despite the fact that the encroachments were removed prior to the time of trial. 463 Pa. at 272, 344 A.2d at 828. *See also Maloney v. Glosser*, 427 Pa. 548, 550, 235 A.2d 607, 608–609 (1967) (equity court's incidental jurisdiction over a legal claim is dependent upon proper equity jurisdiction in the first instance). In the case at bar, however, the condition had been remedied prior to the institution of suit, making *McGovern* distinguishable on its facts. This may be an indication that the general rule of incidental jurisdiction should not be applied and that equity should not be applied to the remaining legal claims. However, we do not reach this question today because

■ Nevertheless, it is surely not true that a chancellor in equity has the boundless discretion to do as he sees fit.[4] Rather, it is well-settled that a chancellor in equity must follow clearly fixed and established principles of law. In *First Fed. Sav. & Loan Ass'n of Lancaster v. Swift*, 457 Pa. 206, 210, 321 A.2d 895, 897 (1974), the Supreme Court of Pennsylvania enforced the age-old maxim that "equity follows the law":[5]

Even recognizing that a court of equity has broad powers, '[i]t is a mistake to suppose, that a court of equity is amenable to no law, either common or statute, and assumes the rule (sic) of an arbitrary legislator in every particular case.' Blackstone's Commentaries on the Law 732 (B. Gavit ed. 1941). When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law. *Hedges v. Dixon County*, 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044 (1893); *Bauer v. P. A. Cutri Co.*, 434 Pa. 305, 253 A.2d 252 (1969); *Scott v. Waynesburg Brewing Co.*, 256 Pa. 158, 100 A. 591 (1917); *Abrahams v. Wilson*,

our disposition of this appeal renders treatment of that question unnecessary.

4. *See Bennetch v. Driestadt*, 15 Lebanon 268, 270–271 (1975) *rev'd on other grounds* 242 Pa.Super. 529, 364 A.2d 398 (1976) where the Court of Common Pleas of Lebanon County stated:
   While an equity court has broad powers it is by no means a "give away" court whose largess is determined by chancellor's subjective concept of what is equitable under any given set of circumstances. In other words, there are rules in equity, as well as in law.

5. As early as 1910, the Supreme Court had stated as follows:
   Where the rights of the parties are clearly defined and established at law, equity will not interfere and change or unsettle those rights, but in all such instances the maxim aequitas sequitur legem is strictly applicable: *Magniac v. Thomson*, 15 How. 281, 56 U.S. 281, 14 L.Ed. 696. A court of equity, in dealing with legal rights, adopts and follows the rules of law in all cases to which those rules are applicable; and whenever there is a direct rule of law governing the case in all its circumstances, the court is as much bound by it as would be a court of law, if the controversy was there pending. . . .
   *Albright v. Albright*, 228 Pa. 552, 560, 77 A. 896, 898–99 (1910).

134 Pa.Super. 297, 3 A.2d 1016 (1939); see 2 J. Pomeroy, A Treatise on Equity Jurisprudence § 425 (5th ed. S. Symons 1941).

In the present case it is clear that the new law of comparative negligence is not dispositive because of the statute's prospective effect. Likewise, as the lower court admits in its opinion quoted above, at law there would be no possibility that the damages in this case could be apportioned as the trial court attempted to do. In this situation, then, equity must follow the law and apply the normal rule that where there is joint and several liability, each defendant is liable for the entire amount of the damages regardless of degrees of fault, *Randall v. Fenton Storage Co.*, 121 Pa.Super. 62, 65, 182 A. 767, 768 (1936), and that apportionment derives only from the tortfeasor's statutory right to contribution under the Uniform Contribution Among Tortfeasors Act.[6] *Incollingo v. Ewing*, 474 Pa. 527, 539, 379 A.2d 79, 85 (1977). *See also Greco v. Buccioni Eng'r Co.*, 283 F.Supp. 978, 985 (W.D.Pa.1967), *aff'd* 407 F.2d 87 (3d Cir. 1969); *Hafer v. Schauer*, 429 Pa. 289, 295, 239 A.2d 785, 788 (1968).

■ Appellee Williams argues that the trial court's apportionment of damages followed the law as articulated in the Restatement (Second) of Torts, § 433A which provides as follows:

Apportionment of Harm To Causes

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or,

(b) there is a reasonable basis for determining the contribution of each cause to a single harm

(2) Damages for any other harm cannot be apportioned among two or more harms.

In the case at bar there were neither distinct harms nor a reasonable basis for determining the contribution of each cause to a single harm. The single resulting harm of silt

6. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 8324 (Supp.1980) (re-enactment of the Act of July 19, 1951, P.L. 1130, § 2, 12 P.S. § 2083).

and debris being deposited upon the Wades' land was caused jointly by appellee Williams and appellant Groves Company. The negligence of both combined to cause a single injury. No specific part nor any hypothetically separate portion of the injury was singularly caused by one or the other. In illustration 4 to Restatement (Second) of Torts, § 433A, the plaintiffs' land was flooded by water coming from the land of defendants A, B & C. It was shown that fifty percent of the water came from A's ditch, thirty percent from B's ditch and twenty percent from C's. This was a sufficient and reasonable basis on which to make an apportionment of damages in accordance with the enumerated percentages. Whereas the illustration points to a situation in which apportionment was proper, the present case is one in which apportionment is not. Appellee Williams did not cause ten percent nor any other reasonably identifiable percentage of the dirt or fill to be deposited on the Wades' land. There was no reasonable basis for determining the contribution of each cause to a single harm and, therefore, the damages should not have been apportioned.[7]  Restatement (Second) of Torts, § 433A(2).

In *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803 (1979), this court recently addressed the issue of apportionment and distinguished it from the rights of contribution and indemnity:

> The *right of contribution* exists only between joint tortfeasors. Contribution distributes the loss equally or each joint tortfeasor pay his or her prorata share. A *right of indemnity* exists when the entire loss is imposed on one person. For example, an original wrongdoer may have the right of indemnity against the treating physician if the original tortfeasor is held liable for damages resulting from both his negligence and that of the physician. However, whenever two actions are brought for the separately

7. It should be noted here that the Restatement places the burden of proving an apportionment on the party who seeks it. Restatement (Second) of Torts § 433(B)(2). Not only has appellee Williams not met this burden but the record is devoid of any evidence indicating the propriety of apportionment.

identifiable acts of negligence on the part of the original wrongdoer and the treating physician, the *apportionment* of damages between the two causes should take place as we allow in the instant case. See Annot. 8 A.L.R.3d 639, 641 (1966).

*Id.,* 263 Pa.Super. at 178, 397 A.2d at 805 (emphasis added).

In making this distinction in *Lasprogata,* we used a very strict definition of the term "joint tortfeasor"[8] and thereby made "apportionment between joint tortfeasors" an inconsistency of terms.[9] Where acts and their results are reasonably capable of separation from other acts and results, the damages should be apportioned accordingly. Here, separation is not possible and the two actors were acting "jointly" in the strict sense of that term. *See, e. g., Shaull v. A. S. Beck New York Shoe Co.,* 369 Pa. 112, 85 A.2d 698 (1952)

**8.** A joint tortfeasor is defined as, '. . . two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.' 12 P.S. § 2082. In Black's Law Dictionary, to be a joint tortfeasor, 'the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.' 4th Ed. (1968) page 1661. A joint tort is defined as 'where two or more persons owe to another the same duty and by their common neglect such other is injured . . .' *Id.* at 973.
*Id.* 263 Pa.Super. at 179, n.4, 397 A.2d at 805 n.4.

**9.** If a right of contribution exists only between joint tortfeasors, and contribution is distinct from apportionment, then apportionment between joint tortfeasors is an inconsistency. In the past, the term "joint tortfeasor" has been used in a much broader sense with the result that several cases have apportioned damages between "joint tortfeasors." *See e. g., Embrey v. Borough of West Mifflin,* 257 Pa.Super. 168, 390 A.2d 765 (1978). In *Lasprogata* we said:
> It is important to note that the use of the word 'joint tortfeasors' in the *Embrey* opinion at 257 Pa.Super. 168, 390 A.2d 765 does not use the term in the strict sense as we are in using it here. Nor does the case of *Shamey v. State Farm Mutual Auto Ins. Co.,* 229 Pa.Super. 215, 331 A.2d 498 (1974) which *Embrey* cites as authority for that point. The *Shamey* case specifically states two separate accidents were involved.
Thus, appellee Williams' dependence upon *Embrey* is ill-founded: *Embrey* involved the situation where the tortfeasors were not acting "jointly" in the strict sense of the term. *Id.,* 263 Pa.Super. at 179, 397 A.2d at 805.

(lessee, contractor and subcontractor held jointly liable where wall of a building fell in killing an employee of the subcontractor). Since equity follows the law, the trial court erred in apportioning damages between the two tortfeasors, ninety percent against appellant Groves Company and ten percent against appellee Williams. We, therefore, hold that each defendant is liable for the entire amount of the judgment with the right of contribution being the vehicle for equalization should any inequity result.

## II.

Appellant's next contention is that the trial court erred in awarding interest in the form of "delay compensation." Originally the lower court simply applied "interest" to the remedial damages sustained. When appellant Groves excepted, however, on the basis that interest is not recoverable on damages in unliquidated tort claims, the lower court acknowledged its error citing *School Dist. of the City of Carbondale v. Fidelity & Deposit Co. of Maryland*, 346 Pa. 491, 31 A.2d 279 (1943) for the proposition that interest runs only from the time of verdict. Nevertheless, the trial judge decided to allow his interest award to stand in the same amount while reclassifying it as "delay compensation." Appellant Groves asserts that this is error.

The Supreme Court of Pennsylvania recently broached this area of the law in *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 74–75, 263 A.2d 336, 337 (1970) where it stated:

Although there is language in some early cases to the contrary, *City of Allegheny v. Campbell*, 107 Pa. 530 (1884); *Pennsylvania Railroad Co. v. Patterson*, 73 Pa. 491, 498–9 (1873), it is now the settled law in this Commonwealth that interest, as such, is not allowed in tort actions when the damages sought to be recovered are unliquidated. *Girard Trust Corn Exchange Bank v. Brink's Inc.*, 422 Pa. 48, 57, 220 A.2d 827 (1966); *Carbondale City School District v. Fidelity and Deposit Company of Maryland*, 346 Pa. 491, 31 A.2d 279 (1943); *Klages v. Philadelphia &*

*Reading Terminal Co.*, 160 Pa. 386, 28 A. 862 (1894); Act of April 6, 1859, P.L. 381, § 1, 12 P.S. § 781 and 1 Sm.L. 7, § 2, 12 P.S. § 782.

This Court, however, has developed the doctrine that: ". . . there are cases sounding in tort, and cases of unliquidated damages, where not only the principle of which the recovery is to be had is compensation, but where also the compensation can be measured by market value, or other definite standards. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive, not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages, in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure." *Richards v. Citizens Natural Gas Company*, 130 Pa. 37, 40, 18 A. 600 (1889). *Irvine v. Smith*, 204 Pa. 58, 53 A. 510 (1902); *Stevenson v. Ebervale Coal Company*, 203 Pa. 316, 52 A. 201 (1902); *Klages v. Philadelphia & Reading Terminal Co.*, supra; *Campbell v. Baltimore & Ohio Railroad Company*, 58 Pa.Super. 241 (1914). We have emphasized that compensation for delay in payment is not a matter of right but is an issue for the finder of fact, the resolution of which depends upon all the circumstances of the case.

The trial judge in *Marrazzo*, as here, did not indicate his reason for awarding interest and the Supreme Court, therefore, vacated and remanded the record for the trial court to make findings of fact and conclusions of law as to the delay. Likewise, we remand the record to the trial court for an assessment of responsibility for the delay, as well as the basis for imposing and computing the amount of "delay compensation." [10] "All circumstances relevant to the delay

10. On remand the lower court should be mindful of the following excerpt from *Marrazzo* :

must be developed and analyzed." *Marrazzo*, 438 Pa. at 77, 263 A.2d at 338. The trial court should articulate what legal standard he is employing and "what circumstances he considered in arriving at his decision." *Id.*, 438 Pa. at 76, 263 A.2d at 338.

It should further be noted that *Murray Hill Estates, Inc. v. Bastin*, 442 Pa. 405, 276 A.2d 542 (1971) does not change the matter. There, in an action for specific performance, the lower court's award of interest was affirmed. The Supreme Court's opinion then quoted with approval a comment from the Superior Court in *McDermott v. McDermott*, 130 Pa.Super. 127, 130, 196 A. 889, 890 (1938) as being appropriate in equity cases:

> An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been 'to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case' * * Unless a case be found, which is a conclusive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a

In *Pierce v. Lehigh Valley Coal Company (No. 2)*, 232 Pa. 170, 172, 81 A. 142 (1911), we outlined one important element: 'The right to compensation . . . is, therefore, usually a question for the jury under the evidence submitted. If the fault in nonpayment of the claim rests with the defendant he cannot complain if he is required to compensate for the delay. If on the other hand the fault lies with the plaintiff by reason of an excessive and unconscionable demand, one which the defendant is required to protect himself against by litigation, he should not be penalized for the unwarranted conduct of the plaintiff and required to pay damages for the delay in the settlement of the claim.' *Conover v. Bloom*, 269 Pa. 548, 112 A. 752 (1921); *Stevenson v. Ebervale Coal Company*, supra; *Mead v. Central Pennsylvania Traction Company*, 54 Pa.Super. 400 (1913). The theory behind this element is the belief that the defendant would have been willing to settle the case at a much earlier stage if the plaintiff had made a reasonable demand and because the plaintiff made an unreasonable demand he cannot complain that he had not had the use of the money during the period of litigation. The burden of proving that the demand was unreasonable is upon the defendant. *Conover v. Bloom*, supra. 438 Pa. at 75–76, 263 A.2d at 338.

plain and simple consideration of justice and fair dealing. *Id.* 442 Pa. at 410, 276 A.2d at 545.

However, in both *Murray Hill Estates* and *McDermott*, as well as *Kelly v. Allegheny Redevelopment Authority,* 411 Pa. 210, 191 A.2d 393 (1963) and *Mauch v. Pittsburgh Pension Bd.,* 383 Pa. 448, 119 A.2d 193 (1956) which are cases specifically cited by *Murray Hill Estates,* 442 Pa. at 410–11, 276 A.2d at 545, there was always a finding as to the existence or absence of fault between the parties. For example, in *McDermott* interest was not allowed because there was "nothing to indicate that the defendant was to any degree responsible for any delay....," 130 Pa.Super. at 132–33, 196 A. at 891, whereas the *Murray Hill Estates* opinion talks of the defendants' "unjustifiable and intransigent refusal to perform according to their clear undertaking." 442 Pa. at 410, 276 A.2d at 545. Thus, fault continues to be the key concept which should be kept in mind by the trial court on remand. *See English Whipple Sailyard, Ltd. v. Yawl Ardent,* 459 F.Supp. 866, 879–80 (W.D.Pa.1978); *Hussey Metals Div. v. Lectromelt Furnace Div.,* 417 F.Supp. 964, 967 (W.D.Pa.1976).

It should also be noted that there is now a Pennsylvania Rule of Civil Procedure allowing for an award of damages for delay in an action seeking compensation for bodily injury, death or property damage.[11] Pa.R.Civ.P. Rule 238.

11. Rule 238, in pertinent part, states as follows:

Rule 238. Award of Damages for Delay in an Action for Bodily Injury, Death or Property Damage

(a) Except as provided in subdivision (e), in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof, the court or the arbitrators appointed under the Arbitration Act of June 16, 1836, P.L. 715, as amended, 5 P.S. § 30 et seq., or the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.101 et seq., shall

(1) add to the amount of compensatory damages in the award of the arbitrators, in the verdict of a jury, or in the court's decision in a nonjury trial, damages for delay at ten (10) percent per annum, not compounded, which shall become part of the award, verdict or decision;

(2) compute the damages for delay from the date the plaintiff filed the initial complaint in the action or from a date one year

This rule was adopted November 20, 1978 and is effective 120 days after December 16, 1978, which is April 15, 1979. Since the trial court entered its final decree on April 27, 1979, this action was pending on the effective date of this rule which renders subsection (f) applicable in the present case,[12] but for subsection (g) which states that the rule does not apply to "pending actions in which damages for delay are allowable in the absence of this rule." Pa.R.Civ.P. Rule 238(g). In this regard, the Supreme Court cites us to *Marrazzo* which we have discussed at length above. On remand, therefore, the trial court should not apply Rule 238(f) if it determines that damages are allowable under *Marrazzo.*

## III.

■ Appellant next contends that the damage award improperly included a bill for the rental of a bulldozer which Mr. Wade and his neighbor, Harold King, Jr., used to cut a ditch diagonally across the face of the slope on the Williams' property so as to prevent more fill from washing down the hill. Harold King, Jr. owns the property between the Williams' slope and the Wade property. Through his father, Harold King, Sr., who works for Harold Dulaney Lumber

after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision.

\* \* \* \* \* \*

(e) If a defendant at any time prior to trial makes a written offer of settlement in a specified sum with prompt cash payment to the plaintiff, and continues that offer in effect until commencement of trial, but the offer is not accepted and the plaintiff does not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made.

12. Rule 238(f) states as follows:

(f) If an action is pending on the effective date of this rule, or if an action is brought after the effective date on a cause of action which accrued prior to the effective date, damages for delay shall be computed from the date plaintiff files the initial complaint or from a date one year after the accrual of the cause of action, or from a date six (6) months after the effective date of this rule, whichever date is later.

Company, Harold King, Jr. secured use of a bulldozer from Dulaney's on behalf of plaintiff, Furman Wade. Together Wade and the Kings worked on the fill site to remedy the problem. A bill was made out to Harold King, Jr., for $2,460.00 for the rental of the bulldozer from Dulaney's. It was marked "Paid. H. K." Appellant, therefore, asserts that it was error for the trial court to include this bill in its award of damages to the plaintiff because the bill was incurred and allegedly paid by a third party who received a substantial benefit from the repairs.

The court below stated that the remedial steps taken by the plaintiffs "were reasonably necessary and appropriate under the circumstances and were justifiable 'from an engineering standpoint.'" Appellant Groves does not dispute the fact that its negligence caused a situation in which such an expenditure was made necessary. Rather, Groves seeks to avoid payment of this concededly legitimate expense because the bill was made out to, and allegedly paid by, Harold King, Jr. instead of Furman Wade, Jr., Equity, however, regards substance over form. *See e. g., Roomberg v. U. S.,* 40 F.Supp. 621 (E.D.Pa.1941); *In Re McKeown's Estate,* 263 Pa. 78, 106 A. 189 (1919). Appellee Wade testified, and the lower court apparently believed, that he incurred the obligation to pay this bill. Regardless of whether this obligation was owed to Harold King, Jr. or Dulaney himself, the fact that it was incurred by Mr. Wade as a result of the defendants' negligence is alone sufficient to meet the Wades' burden of proof as to damages, because the finder of fact could reasonably make, as the trial court did, a legal assessment of the damages on this basis. *See Gordon v. Trovato,* 234 Pa.Super. 279, 338 A.2d 653 (1975). Since the trial court heard the testimony and was able to make a determination as to the credibility of the evidence indicating that this obligation was actually incurred by Mr. Wade, we will not disturb its decision absent a clear abuse of discretion which is not present here. Thus, we affirm the trial court's inclusion of the Dulaney bill as part of the damage award.

## IV.

Appellant's final allegation of error is that the lower court improperly awarded damages for a reduction in the fair market value of the property in addition to damages for the cost of repairs. The lower court's rationale for doing so was that the damages were "partly reparable and partly permanent." For the remediable injuries, the court awarded a sum of $6,905.99 which represents the cost of repairs, and for the permanent injury, the court awarded $5,250.00 which represents the depreciation in the fair market value of the property from its condition prior to the damage and its condition after repairs had been made. We affirm this portion of the lower court's holding.

At trial, the Wades' real estate appraisal expert, Mr. Julian Fine, testified that the situation had been corrected "probably to a full degree." The Wades' engineering expert, Michael Sydlik, acknowledged that barring a tremendous cloudburst or failure of the existing vegetation, "most of the problem is over." Finally, appellee Furman Wade himself has indicated that nor further trouble was experienced after 1975. Nevertheless, Mr. Fine testified that a prospective buyer who was informed of the history of the property would pay less for the property than he would otherwise have been willing to pay, due to the possibility, albeit remote, of another slide and because of the necessity of regularly maintaining the drainage pipes, ditches and catch basins in repair over the years. In an attempt to calculate how much a buyer would depreciate the value of the property, Mr. Fine arrived at a ten percent depreciation factor, which indicates total depreciation in the amount of $5,250.00 when applied to property with a normal fair market value of $52,500.00. Based upon this testimony, the trial court stated as follows:

> In the instant case, the early damage caused by the runoff is obviously over and is fairly well contained. However, that does not change the fact that the drainage field above plaintiffs' property is permanently changed, and must be considered as permanently resulting in a

change of value, the amount of which was fixed at $5250.00 by Julian Fine, a well-recognized licensed real estate broker, which is unrebutted and we believe to be a correctly founded figure.

Appellant Groves Company contends that this is "pure speculation." It is appellant's position that the damages caused were fully reparable, and were, in fact, fully remedied; and, therefore, the cost of repairs should be the sole measure of damages. We cannot agree.

■ It is well-settled law in this Commonwealth that the measure of damages for injury to property is the cost of repairs where that injury is reparable; however, where the injury is characterized as permanent, the measure of damages becomes the decrease in the fair market value of the property. *See Art Club of Philadelphia v. Hayman & Goodman*, 325 Pa. 587, 592, 190 A. 922, 924 (1937); *Rabe v. Shoenberger Coal Co.*, 213 Pa. 252, 257–58, 62 A. 854, 855 (1906); *Vanderslice v. City of Philadelphia*, 103 Pa. 102, 109 (1883); *Acker v. All States Freight, Inc.*, 27 Lehigh L.J. 359, 362–63 (1957). *See also Foster v. Humberg*, 180 Kan. 64, 68, 299 P.2d 46, 51 (1956); Annot., 36 A.L.R.2d 1253, 1272 (1954). These cases are also authority for the allowance of damages for the cost of repairs in addition to the reduction in the fair market value of the property where the injury to such property is partially reparable and partially permanent. *Id.* This is in line with the modern notion of using a "compensatory standard" as the guiding light in matters concerning damage awards. *See Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971). In *Incollingo* the Supreme Court stated that "fixed and formulated rules relating to the appropriate measure of damages in varying circumstances are not immutable, and must give way when it is determined that they are not setting a compensatory standard." *Id.*, 444 Pa. at 308, 282 A.2d at 229.[13] *See also Rabe v. Shoenberger*

13. The *Incollingo* opinion also stated that "(c)learly, damages are to be compensatory to the full extent of the injury sustained, but the award should be limited to compensation and compensation alone." 444 Pa. at 307, 282 A.2d at 228.

*Coal Co.*, 213 Pa. 252, 257–58, 62 A. 854, 855 (1906) (" 'The general principle upon which compensation for injuries to real property is given, is that the plaintiff should be reimbursed to the extent of the injury to the property.' ") If appellees, Mr. and Mrs. Wade, were only reimbursed to the extent of the cost of their repairs, then, if the testimony of Mr. Fine is to be believed, to a real and substantial degree they would suffer a loss of ten percent of the market value of their home without having been fairly compensated. They would not be put in the same or a substantially similar position that they were in immediately prior to the defendants' negligence. As counsel for the Wades states in his brief: "The Plaintiffs have been permanently deprived of 10% of the market value of their real estate as a direct result of the Defendant's actions."

Since *Art Club* and *Acker* involved permanent tangible injury to a building, one might argue, as appellant does, that there is only an illusory permanent injury in the present case. Since there is no physical and tangible injury to a portion of the Wade property which can be characterized as permanent, the argument follows that the measure of damages should not include the reduction in the fair market value of the property. The lower court rejected this argument in a portion of its opinion which is quoted above, by concluding that the permanent change in the drainage field above the plaintiffs' property was a sufficient basis upon which to assess damages for the diminution in market value. Although this does not point to a physical permanent injury done directly to plaintiffs' land, the above analysis is reflective of a scholarly and realistic approach proffered by a recent commentator on the law of damages. He states that "physical permanency of the injury is not the real basis for the choice between the diminution approach and the repair approach. Rather, the term 'permanent injury' seems to express the conclusion that, for some reason, repair cost would be unfair or inappropriate." Dobbs, Law of Remedies

314 (1973).[14]  In this case, it has already been stated that repair costs would be inappropriate to fully compensate the appellees.  This real and substantial loss to the Wades was established by the testimony of an experienced real estate appraiser whose competency to so testify was not challenged.  In fact, the entire substance of this witness' expert testimony went totally unrefuted.  The trial judge, acting as finder of fact, recognized the expertise of the appraiser, Mr. Fine, and found his testimony to be perfectly credible.  We, therefore, find no merit to appellant's claim that the diminution of fair market value was so remote or speculative to have been the basis of a damage award.  The trial court's assessment of permanent damages in the amount of $5,250.00 is affirmed.

The order of the court below is reversed with respect to issue I, affirmed with respect to issues III and IV, and vacated and remanded to the court below for further proceedings consistent with issue II of this opinion.

MONTGOMERY, J., files a concurring and dissenting opinion.

MONTGOMERY, Judge, concurring and dissenting:

I concur with the majority in the disposition it has made of Issues II "delay compensation", III "bill for rental of bulldozer," and IV "consequential damages for the reduction in the fair value of the property," but I dissent as to Issue I relating to the chancellor's right to apportion the damages. The majority agrees with the lower court in its conclusion of law finding the defendants jointly and severally liable, but reverses the lower court's apportionment of damages.  I disagree with the majority and the lower court that the defendants were acting jointly, but support the chancellor's apportionment of damages.

14.  While Dobbs was primarily concerned with the converse situation of the plaintiff recovering more than he might be entitled to, his reasoning is equally applicable to the present situation where the plaintiff would otherwise not be fully compensated.

The majority rightly notes that joint tortfeasors are jointly and severally liable, and any damages resulting from their negligence cannot be apportioned. While I agree with that axiomatic statement of law, I do not find that principle applicable to the case at bar.

To imply joint liability, the defendants must act in concert to bring about the single injury, 37 P.L.E. Trespass Sect. 44. I do not agree that the defendants herein were acting jointly. The lessee Groves created the condition causing the damage to plaintiff's property by dumping fill on the lessor's land in a negligent manner, by failing to provide adequate terracing, ditching and sedimentation ponds on the waste area, in failing to provide adequate erosion resistant vegetation growth after stripping away what was there, and in generally failing to take necessary steps or provide adequate supervision to insure proper drainage to the area for the protection of adjoining properties. As the lessee, Groves was in full control of the land fill operation, and as such received the complaints from affected parties as to the manner in which it was doing the work. After four years of operation, Groves did finally succeed in correcting the negligent conditions, since the chancellor was satisfied that the early damage caused by the run off of water and waste material was over.

As to the lessor-land owner Williams, it is unrefuted that she had a legitimate right to use her property in any manner she chose, so long as that use did not create an unreasonable risk of harm to adjacent property owners. Furthermore, she was permitted to make improvements to her land which resulted in a not unreasonable increase of the natural flow of water from a higher to a lower property. See *Chamberlin v. Ciaffoni*, 373 Pa. 430, 96 A.2d 140 (1953), *Leiper v. Heywood-Hall Construction Company*, 381 Pa. 317, 113 A.2d 148 (1955). When the flow onto plaintiff's property became excessive, it is difficult to visualize how Williams could have taken any affirmative steps to correct the conditions when Groves was in the process of attempting such remedial steps, or when she should have properly done so.

The only negligence that could be attributed to Williams was possibly her failure to supervise the corrective measures taken by Groves to insure that the defect was cured as soon as possible. I believe the facts of the instant case are analogous to the situations involving a tortfeasor and a physician who later negligently treats the victim. We have recently held in such a case that:

"a tortfeasor originally causing an injury and a physician who subsequently aggravates or causes a new injury are not joint tortfeasors."

*Lasprogata v. Qualls*, 263 Pa.Super. 174, 179, 397 A.2d 803, 805 (1979).

*McArthur v. Balas*, 402 Pa. 116, 166 A.2d 640 (1961) can be viewed as supporting this proposition as applied to landowners and lessees. Therein, the landowner's liability for a landslide from his property onto the adjoining property was based upon his failure to take corrective or preventive measures to eliminate the damages to the adjacent property, and not upon the artificial conditions which caused the harm. From the above analysis, it is clear to me that the acts of the tortfeasors upon which liability was based were, like the tortfeasor physician, subsequent in time and in negligence and cannot be viewed as a joint act.

Since they were not joint tortfeasors, joint and several liability is inappropriate herein. Rather, the chancellor properly followed the Restatement of Torts, 2nd Ed. Sect. 433A, which provides:

Apportionment of Harm to Causes

"(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more harms."

Since I find the acts of negligence of Groves and Williams to be separate and identifiable from each other in nature

and in time, they are properly subject to apportionment pursuant to § 433A of Restatement 2nd. Torts. I would affirm the apportionment of damages.