# Wilborn Hosiery Company v. Grissinger

*Stuart J. Magdule*, for plaintiff.
*Paul L. Zeigler,* for defendant.

DOWLING, *J.*, June 3, 1981—Does a covenant in a lease providing for renewal under like terms and conditions incorporate the renewal option itself so that the lessor is "coupled in bonds of perpetuity"?[1]

On November 1, 1973, plaintiff and defendant executed a one-year lease for four rooms in a building owned by Wilborn Hosiery which contained a provision that the lessee:

"shall have the renewal option to renew this lease for the premises rented hereunder for a period of four (4) successive years on the same terms and conditions heretofore" (paragraph 23).

These options were exercised until October 31, 1978 when the lease as renewed came to its conclu-

---

1. Henry VI Part I, Act IV, Scene VII.

sion. Thereafter Mr. Grissinger continued to occupy the premises.

The lease provided in paragraph 5:

"A holding over by the lessee beyond the term of this lease shall be a renewal of the term of this lease for another like term and the said renewal shall be under and subject to all provisions as contained in this agreement of lease provided however, that such renewal shall be at the option of the lessor."

At the expiration of a one-year holding over period, Wilborn Hosiery decided not to continue the lease and so notified Mr. Grissinger. He refused to leave and Wilborn brought the present actions to secure possession and for rent due.[2]

In a non-jury trial the court found in favor of plaintiff and awarded possession of the premises to Wilborn Hosiery as well as the sum of $8,780 in back rent. Defendant filed timely exceptions to the verdict and conclusions of law but has briefed and arued only one point,[3] i.e., the trial court's determination that defendant's holding over under the lease of November 1, 1973 subsequent to 1978 did not incorporate the renewal options of the original lease.

It is defendant's contention that paragraphs 5 and 23 gave him the right to renew for a second five-year term consisting of the initial year and then the potential four additional successive years

---

2. Defendant proffered a rent check which was returned by plaintiff's manager.

3. We see no reason why we cannot conclude as the appellate courts do that all other points are deemed waived. See, Commonwealth v. Mitchell, 464 Pa. 117, 246 A. 2d 48, (1975) and Commonwealth v. Peacock, 246 Pa. Superior Ct. 212, 369 A. 2d 886 (1977).

for a total occupancy period of ten years, which he activated by holding over during the sixth year. The law would appear otherwise. In Pettit v. Tourison, 283 Pa. 529 129 Atl. 587, (1925) the court, after noting that there were many covenants found in leases which are independent and not essential parts of the demise and which without express agreement are not to be incorporated into renewals such as a covenant to renew stated:

"The rule is well established that a lease containing a covenant to renew at expiration upon the same terms and conditions is fully carried out by one renewal without the insertion of another covenant to renew."

The Superior Court in Sterle v. Galiardi Coal & Coke Company, 168 Pa. Superior Ct. 254, 257, 77 A. 2d 669 (1951) said:

". . . [C]ovenants for continued renewals tending to create a perpetuity are not favored in law, 51 C.J.S., Landlord and Tenant, §61; and leases will not be construed to give them that effect unless the intention is expressed in unequivocal terms." 3 Thompson on Real Property (Permanent Ed.) §1174.

Of more recent though less exalted vintage is Barr v. March, 61 D. & C. 2d 588 (1972), where the parties entered into a lease agreement for an initial term of ten years with the provision that the lessee was given the right and option of renewing the term of the lease for a further period of ten years under the same terms and conditions of the original lease. In 1962, prior to the expiration of the ten-year period, the lessee exercised its option to renew the lease for the additional ten years. In 1972, the lessee attempted to renew the lease for a third ten-

year period on the basis that the first renewal on the same terms and conditions as the original lease automatically incorporated another renewal option. The court ruled against the lessee and indicated that unless the intention of the parties was expressed in unequivocal terms for the additional option it would not be read into the lease. The court said at 591 "Plaintiff urges that the use of the words 'all terms of the original lease shall be applicable during the term of the renewal period,' constitute such an unequivocal expression. With this contention we do not agree" and then held that as stated in earlier cases a general covenant to renew with like terms, conditions and covenants does not entitle the tenants to have the covenant for renewal inserted in the renewed lease.

Moreover, if the general language of paragraph 5 were to govern, the limitation of paragraph 23 of renewals for four successive years would be inconsistent if not contradictory. It is well established that if two provisions in a contract are inconsistent, the specific provision will govern as a qualification of the general provision: Restatement of Contracts, §236(c). In addition, there is no logical cutoff at an additional five-year period. If defendant's interpretation created renewal options of the lease which came into effect by holding over, then the same interpretation would mean that each renewal that occurred pursuant to paragraph 23 would also incorporate new renewal options thus creating a lease for perpetuity at the option of the lessee.

Defendant relies on Bennetch v. Dreistadt, 242 Pa. Superior Ct. 529, 364 A. 2d 398, (1976). There the court, though citing Pettit, supra, as authority, held that the contract in question which stated: "this lease and all of its terms, etc." must be considered as evidencing an express desire to incorporate

an extension of the right of first refusal with any extension of the lease. We find this case disturbing but in view of the above authorities and the implication of perpetuity not controlling.

Accordingly, we enter the following

## ORDER

And now, June 3, 1981, defendant's exceptions are overruled and judgment is entered on the verdict.